## STATE v. HADLEY.

No. 4162.   Decided March 28, 1925.   (234 P. 940.)

1.  CRIMINAL LAW—ACCUSED PRESUMED SANE.  An accused is presumed to be sane, and defendant must rebut such presumption before defense can be submitted to jury.[1]

2.  CRIMINAL LAW—BURDEN ON STATE TO SHOW SANITY OF DEFENDANT BEYOND REASONABLE DOUBT, WHERE PRESUMPTION OF SANITY OVERCOME BY DEFENDANT'S TESTIMONY.  When testimony has been introduced to overcome presumption of sanity, burden shifts, and state must prove beyond reasonable doubt that defendant was sane at time of commission of offense.

3.  CRIMINAL LAW—EVIDENCE HELD NOT TO CONCLUSIVELY SHOW DEFENDANT'S INSANITY.  In prosecution for statutory rape, evidence as to defendant's insanity *held* not so conclusive that it can be said as matter of law that jury, in returning verdict of guilty, failed to give consideration to evidence in case.

4.  CRIMINAL LAW—INSANITY QUESTION OF FACT FOR JURY, AND ITS VERDICT NOT DISTURBED, UNLESS CONTRARY TO UNCONTRADICTED TESTIMONY.  Question of sanity or insanity of accused is question of fact primarily for jury, and verdict will not be set aside unless rendered in disregard of uncontradicted testimony.

5.  CRIMINAL LAW—INSTRUCTION ON LAW GOVERNING RIGHTS OF ACCUSED, SETTING UP INSANITY AS DEFENSE, APPROVED.  In prosecution for statutory rape, in which insanity was set up, instructions that, if jury entertained reasonable doubt as to defendant's sanity at time of commission of offense, or that he was mentally irresponsible, they should find defendant not guilty, and that insanity must be such as to deprive defendant of capacity to understand that act committed constituted an offense, *held* to fairly define law on that defense.

6.  CRIMINAL LAW—INSTRUCTION TO CONSIDER OTHER ACTS, IN DETERMINING INTENT OF DEFENDANT AND PROBABILITY OF COMMISSION OF CRIME CHARGED, HELD NOT PREJUDICIAL.  In prosecution for statutory rape, instruction that jury could consider other acts of improper familiarity between prosecuting witness and defendant, but only as tending to explain acts charged in information, was not prejudicial, because testimony tended to show acts barred by limitations, since there was no effort to convict defendant of any offense, except one committed on date charged.

[1] *State v. Brown,* 36 Utah, 46, 102 P. 641, 24 L. R. A. (N. S.) 545.

7.  CRIMINAL LAW—TESTIMONY OF SIMILAR ACTS BETWEEN PROSE-
    CUTRIX AND DEFENDANT ADMISSIBLE. Testimony respecting for-
    mer relations of parties and similar crime between prosecutrix
    and defendant is permissible, as tending to show probability or
    improbability of commission of offense charged.

8.  CRIMINAL LAW—ADMISSION OF PHYSICIAN'S TESTIMONY, BASED
    ON INFORMATION RECEIVED FROM PROSECUTRIX'S MOTHER, HELD
    ERROR. In prosecution for statutory rape, admission of testi-
    mony. of physician, based on information received from prosecu-
    ·trix's mother, that prosecutrix had suffered a miscarriage, held
    error.

9.  CRIMINAL LAW—ERRONEOUS ADMISSION OF TESTIMONY HELD NOT
    TO REQUIRE ·REVERSAL, IN VIEW OF CONCLUSIVE EVIDENCE OF
    GUILT. In prosecution for statutory rape, admission of physi-
    cian's testimony, based on information received from prosecu-
    trix's mother, that prosecutrix had suffered a miscarriage,
    though erroneous, held not to require reversal, under Comp.
    Laws 1917, §·· 9231, where commission of offense was conclu-
    sively proven, and not disputed by defendant.[2]

Appeal from District Court, Second District, Weber
County; *George S. Barker,* Judge.

Lorenzo Hadley, was convicted of statutory rape, and he
appeals.

AFFIRMED.

*Chez & Douglas,* of Ogden, for appellant.

*Harvey H. Cluff,* Atty. Gen., and *L. A. Miner,* Asst. Atty.
Gen., for the State.

---

[2] *State* v. *Cluff,* 48 Utah, 102, 158 P. 701.
See Headnote 1.   16 C. J. p. 533, 537.
Headnote 2.   16 C. J. pp. 532, 776.
Headnote 3.   16 C. J. p 925.
Headnote 4.   16 C. J. p. 925;  17 C. J. p. 270.
Headnote 5.   16 C. J. pp. 974, 975.
Headnote 6   16 C. J. p. 1005.
Headnote 7.   16 C. J. p. 609.
Headnote 8.   16 C. J. p. 748.
Headnote 9.   17 C. J. p. 368.

GIDEON, C. J.

The appellant was convicted of a felony. The information charged him with having had carnal knowledge of the body of a female under the age of 18 years and of the age of 15 years. Motion for new trial was denied. From the judgment of conviction, this appeal is prosecuted.

Complaint is made, by the assignment of errors, that the verdict is not supported by any sufficient competent evidence; that the court erred in certain instructions given to the jury, and in refusing other requests made by appellant. Error is also assigned on the ruling of the court in admitting certain evidence over appellant's objection. The theories of the defense, as stated in counsel's brief, are:

"First. Insanity of defendant at the time of the alleged offense, as shown by the opening statement by Mr. Chez, and supported by the testimony of the doctors and laymen, and that the plaintiff failed to offer any testimony rebutting defendant's insanity.

"Second. That the alleged offense on November 5, 1923, was not a completed act, in that penetration did not occur at that time, and that the first completed offense proven by plaintiff's testimony, and by which plaintiff is bound, occurred some 5 years prior, and that prosecutrix was 11 years old at that time, and hence the offense does not fall within the statute of carnal knowledge."

We will first consider the second theory or claim of appellant. We have no difficulty in concluding that there is sufficient competent evidence in the record to support a finding by the jury that the act complained of was a completed offense. It would serve no good purpose to recite in this opinion all the details of the testimony bearing upon that particular question. It is sufficient to say that the language of the prosecuting witness, in describing the conduct of appellant at the time the offense is alleged to have been committed, has no other meaning than the commission of the offense charged, and that it was a completed act. The appellant also admitted his guilt to the arresting officers and to others.

As to the first proposition above stated: By section 5848, subd. 16, Comp. Laws Utah 1917, the words "Insane person" are defined as including idiots, lunatics, distracted persons, and persons of unsound mind. Section 7915 of the same

compilation, in enumerating persons capable of committing crimes, includes all persons except "* * * idiots, lunatics and insane persons." Section 7909 of the Code among other things, provides:

"* * * All persons are of sound mind who are neither idiots, nor lunatics, nor affected with insanity."

The appellant was 72 years of age, resided in Weber county, had raised a family, and, so far as the testimony discloses, had until recent years borne a good reputation in that community. The chief defense relied on was that of insanity. Several witnesses testified for the defense. Four of these witnesses were physicians. Two physicians had made a personal examination of the appellant a few days prior to the trial. These two physicians had known appellant for a quarter of a century. They had not, however, been intimately associated with him, and had known little of his life during the past 10 years. They were called into the case a few days before the hearing. They separately interviewed the defendant, made physical examination, took his blood pressure, and discussed with him the commission of the offense, with which he was charged. These physicians gave it as their judgment that the appellant, was not mentally sound, in this: That he was suffering from senile dementia, and was unable to appreciate or know the enormity of the offense with which he is charged. However, on cross-examination, when asked by the prosecuting attorney what their judgment would be if it was made to appear that appellant at different times had cautioned the prosecutrix against saying anything about their relationship, and advised her that he would have to go to jail if it became known, they stated that such language would indicate that appellant either understood and appreciated that his conduct was wrong, and that he had been guilty of an offense, or at least that he had a fear of punishment.

Appellant's son testified to certain peculiar conduct or acts of appellant during the year immediately preceding the date of the alleged offense. The son's testimony, however, when analyzed, is not very conclusive as establishing the insanity of appellant. Two additional physicians, neither of whom

personally knew the defendant, in answer to hypothetical questions, gave their views as to appellant's mental condition. These physicians agreed that the facts stated in the hypothetical question indicated senile dementia.

It is earnestly insisted by counsel for appellant that this case is controlled by the opinion of this court in *State* v. *Brown*, 36 Utah, 46, 102 P. 641, 24 L. R. A. (N. S.) 545. If the testimony introduced in this case on the part of appellant to support insanity, or lack of mental ability to appreciate right and wrong, was as convincing as it was in the *Brown Case*, then counsel's contention should prevail. An examination of that opinion will, however, disclose that the testimony indicating insanity then under consideration by the court was much stronger and much more conclusive as to the mental condition of the defendant than in the present case. Whatever may be the rule of law elsewhere, it is established in this jurisdiction by the opinion in the *Brown Case*, in harmony with the great weight of authority, that any one charged with an offense is presumed to be sane, and that it is incumbent upon the defendant to rebut that presumption before the defense of insanity can be submitted to a jury.

It is also determined in the *Brown Case* that, when testimony has been introduced to overcome the presumption of sanity, the burden shifts, and it is incumbent upon the state to prove beyond a reasonable doubt that defendant was sane at the time of the commission of the offense. It is, however, recognized in the opinion in that case that not in every case in which proof is offered by the defendant as to his sanity is it incumbent upon the state to rebut such evidence by proof tending to show the sanity before a conviction can be had. In the course of the opinion it is said:

"There, no doubt, may be instances where the evidence offered by the defendant upon the question of his sanity is so weak and inconclusive that the state may well insist upon the presumption of sanity, and thus need not offer any evidence in rebuttal of defendant's evidence upon the question."

We are not to be understood as holding or intimating that the testimony that was adduced by the defense in this case

should be or ought to be classed as weak or inconclusive; but in our judgment, the testimony respecting the insanity of the appellant is not so positive or conclusive that it can be said as matter of law that the jury, in returning a verdict of guilty, acted arbitrarily or failed to give consideration and regard to the evidence in the case. The 3, 4 question of the sanity or insanity of any one accused of the commission of a crime is a question of fact primarily for the jury to determine. Courts should not set aside a jury's verdict, unless it appears from the whole record that the jury, without reason and in disregard of the uncontradicted testimony, rendered its verdict contrary to such testimony.

The court clearly instructed the jury that if, from a consideration of all the evidence, the jury entertained a reasonable doubt as to the sanity of the defendant at the time of the commission of the offense, or that he was mentally irresponsible at the time of the alleged act, then they should find the defendant not guilty. The court further instructed the jury that insanity or mental unsoundness must be of such degree as to leave the accused in such a mental state as to deprive him of the capacity to understand that the act 5 committed constituted an offense and was wrong. These instructions fairly defined the law governing the rights of the accused upon a defense based upon insanity or lack of mental ability. Underhill, Crim. Ev. (2d Ed.) § 154 et seq.

The court further instructed that, if the jury was of the opinion that the testimony adduced by appellant was sufficient to overcome the presumption of sanity, then the burden was upon the state to prove beyond a reasonable doubt that the defendant was sane at the time of the commission of the offense.

Serious objection, however, is made to the court's instruction No. 26. The effect of that instruction was to advise the jury that during the trial testimony had been received tending to show sexual acts or improper familiarity between the prosecuting witness and the appellant at times prior to the

offense alleged in the information. In connection with that instruction, the court further advised the jury that this testimony was received, and could be considered by the jury, only in so far as it might explain the acts charged in the information, and might enable the jury to determine the intent of the appellant and the probability or improbability of the commission of the act charged in the information, and for no other purpose. The serious objection urged, against that instruction, however, is that there was some testimony tending to show that improper relationship had existed between appellant and the prosecuting witness for five years preceding the date of the offense charged in the information. It is the contention that prosecution for those acts, if such were committed, was barred by the statute of limitations. The question of when the improper relations, if any, between appellant and the prosecuting witness really began, is somewhat indefinite. In any event, the instruction could not be prejudicial, as there was no effort to convict appellant of any offense, except the one committed on the date charged in the information.

The consideration of this testimony by the jury was limited, as stated in the court's instruction. It could only be con-- sidered as it might bear upon the intent of the defendant and the probability or improbability of the commission of the offense charged. In other words, there was no intention and no attempt to convict the appellant of an offense against which the statute of limitations had run. Testimony respecting the former relations of the parties and the former acts of adultery or similar crimes between the prosecutrix and the defendant is permissible as tending to show the probability or improbability of the commission of the offense charged. Underhill, Crim. Ev. (3d Ed.) § 156.

Appellant also assigns error upon the refusal of the court to give certain instructions requested by the appellant. An examination of the instructions given, however, shows conclusively that the substance of those requested was contained in the instructions given by the court.

A witness for the state, Dr. Dumke, was permitted to tes-

tify, over objection of appellant, that from an examination made by him of the prosecuting witness he was of the opinion that there had been pregnancy. This witness was also permitted to testify, based upon certain information given him by the mother of the prosecutrix, that there had been a miscarriage. Strenuous objections were interposed to the testimony respecting the miscarriage, on the ground that the opinion of the witness was based upon hearsay testimony, and therefore his testimony was not competent. It appears that the witness had been advised by the mother of the prosecutrix as to her condition respecting menstruation and what had passed from the prosecutrix. Based upon this information, the witness was permitted to give it as his opinion that there had been a miscarriage. It is now strenuously insisted that permitting that testimony was erroneous and prejudicial.

. It was error to admit this testimony. The opinion of Dr. Dumke that there had been a miscarriage was based upon information given him by the mother of the prosecutrix. The rule of law, supported by the authorities, as to the competency of this class of testimony, is stated in 2 Jones on Ev. § 376, as follows:

"So that while, as we have seen, the opinion of experts may in some cases be based upon personal knowledge gained from their own observation or examination, they cannot give in evidence opinions based upon information gained from the statements of others outside the courtroom, since in such case the opinions would depend upon hearsay. Thus, when a medical witness is examined as an expert, his opinion is inadmissible if based upon the declaration of nurses or other physicians, made out of court, although, on grounds elsewhere discussed, the declarations of the patient may, under proper limitations, form a part of the basis of such opinions."

In 5 Ency. of Evidence, at page 606, the same rule is stated in the following words:

"Subject to the exception that a medical witness will be permitted to base his opinion in part upon the clinical history of a case given to him by his patient, an expert will not be allowed to testify to an opinion formed upon information derived by him from private conversations with persons who are supposedly familiar with the facts in the case."

It remains, however, to be determined whether the error committed by admitting this testimony was so prejudicial as to work a reversal of the judgment. The defendant was charged with having had carnal knowledge of a female under the age of 18 years and over the age of 15 years. The fact of a miscarriage could only be corroborative of the commission of the act charged in the information. The commission of the offense was proven by the prosecuting witness, also by admissions made by the defendant, as well as by circumstances testified to by other witnesses for the state. No proof was offered by the defendant tending to dispute the state's testimony respecting the actual commission of the act constituting the offense charged. The defendant did not testify in the case. It thus quite conclusively appears from the whole record that the offense charged in the information was proven by the state's witnesses, and that the same was not disputed by any testimony on the part of the defense. If the record in this case showed serious or any conflict in the testimony respecting the commission by the defendant of the offense charged, then a very difficult question would have been presented, in determining whether the error committed by the admission of the opinion of the doctor would not have been so prejudicial as to compel a reversal of the judgment.

Under the provisions of Comp. Laws, Utah 1917, § 9231, this court is not authorized to reverse a judgment unless the error complained of has resulted in a miscarriage of justice. If we apply and limit the term "miscarriage of justice;" as the same has been defined by this court in *State* v. *Cluff*, 48 Utah, 102, 158 P. 701, we are unable to see wherein the admission of this testimony, although erroneous, resulted in a miscarriage of justice.

Judgment affirmed.

THURMAN, FRICK, CHERRY, and STRAUP, JJ., concur.