[Crim. No. 14268. Second Dist., Div. One. Apr. 11, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT DON WILSON, Defendant and Appellant.

Gordon C. Phillips for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Walter E. Wunderlich, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of kidnaping, robbery and assault with a deadly weapon.

In an information filed in Los Angeles on November 3, 1966, defendant was charged in count 1 with kidnaping in that on October 3, 1966, he did forcibly take Marie and Philip Guernsey from one part of Los Angeles County to another part thereof; in count 2 with robbing Roy Fuhrer of certain personal property on October 2, 1966; in count 3 with robbing South Vanhoose and Cy Young of certain personal property on October 3, 1966; and in count 4 with attempting to murder Sergeant Goldsmith on October 3, 1966. It was further charged in counts 2 and 3 that defendant was armed with a deadly weapon (an automatic pistol) at the time of the commission of the respective offenses. In count 4 it was charged that he was so armed at the time of his arrest. It was further charged that defendant previously had been convicted of robbery in Los Angeles County in April 1965 and had served a term in prison therefor. Defendant was found guilty as charged in counts 1, 2 and 3. He was found guilty of assault with a deadly weapon, an included offense to that charged in count 4. He was sentenced to the state prison, the sentences to run concurrently with each other and "consecutively to time owing." A timely notice of appeal was filed.

Defendant does not dispute the facts constituting the twenty-four hour episode of criminal violence in which he engaged, commencing on the evening of October 2, 1966. That evening around 10:30 p.m. Roy Fuhrer was walking along the Pacific Coast Highway when defendant accosted him at gun point and stole his money. A couple of hours thereafter defendant knocked at the door of the Guernsey residence in Long Beach and when Mr. Guernsey answered the door, defendant forced his way into the living room, gun in hand. He commanded Mrs. Guernsey to sit with her husband on the living room couch, explored the house to be sure they were alone, and kept the couple under surveillance at gun point the rest of the night, brandishing the weapon each time the husband or wife made the slightest move. He had some beer and coffee, bathed and changed to clean clothes which the Guernsey's provided, but constantly kept his weapon ready and the bathroom door open to keep the couple in full view. Around 5:30 a.m. he allowed the Guernsey's a couple of hours of rest, but maintained his vigil in the living room. Although the Guernseys observed that defendant appeared to be under the influence of alcohol when he first arrived, they noticed that his speech became coherent within a short time thereafter. At about 10 a.m. the next morning defendant drank some coffee and then left.

It was about 1:30 p.m. the same afternoon when defendant robbed at gun point the patrons of the Bungalow Inn bar in Long Beach, then ordered them into a room behind the bar, and escaped. Officer Goldsmith was notified that a robbery was in progress and arrived at the Bungalow Inn shortly after defendant left. He pursued defendant up the adjoining street, but was distracted for an instant when a gardener ran across the street in front of the police car, and turned to see defendant only eight feet away and running toward the police car gun in hand. Defendant shot once at the officer while he was behind the wheel and fired six more shots toward him when the officer sought refuge under the car. Ultimately defendant was arrested and police officers described him as apparently sober shortly thereafter.

Defendant testified in his own defense, admitting the commission of the physical acts which constituted the charged offenses. He explained, however, that he commenced drinking some sixteen days earlier at the conservation camp where he was in custody, then escaped and took shelter in some unoccupied cabins he came upon. In the first cabin he found

and consumed a case and a half of beer and eight or nine fifths of liquor; in another cabin he found and consumed a case of beer, a pint of creme de cocoa, and a fifth of Vodka. On October 2, 1966, defendant was confronted by the owners of the cabin he was occupying. He forced them to give him about thirty dollars, and to drive him to Long Beach. There he visited a number of bars and drank a quantity of beer before he met and held up Roy Fuhrer.

Defendant recalled the specific incidents of the trip to Long Beach, but maintained that he could remember little thereafter. He recalled holding up Roy Fuhrer, but did not know whether he obtained any money. He remembered forcibly entering the Guernsey home gun in hand, commanding the Guernseys to remain in the living room, maintaining control of his weapon and brandishing it at them occasionally. He also recalled that he telephoned his parents, bathed, shaved and changed clothes at the Guernsey residence. He had no difficulty in walking from the Guernsey home to the first bar he patronized. Finally, defendant remembered seeing a man at work on the cigarette vending machine at the Bungalow Inn and recognizing that this man was in possession of a lot of money. Defendant recollected demanding money from this man and the patrons in the bar, then ordering the people into the back room while he escaped. Defendant, however, steadfastly maintained that he did not recall shooting at the police officer in the course of his attempted escape.

Two psychiatrists evaluated defendant's conduct and diagnosed him as a chronic alcoholic. Doctor Bret Burquest had examined defendant when he voluntarily committed himself to Harbor General Hospital late in 1962 and later had observed defendant's conduct when he threatened hospital guards with a razor. The doctor believed that defendant then knew where and who he was, knew that he was armed with a razor blade, that he was approaching another human being, and that the blade would cut that person if he attacked. Doctor Ditman, who examined defendant on April 4, 1966, formed the opinion that had defendant not been intoxicated on the date of the crimes, he probably would not have engaged in that conduct. He felt that defendant's alcoholic condition substantially diminished his ability to reason or to reflect in a mature manner upon the gravity of the contemplated acts of robbery, kidnaping, and assault. Doctor Ditman responded to the court's extensive questioning, however, by testifying that defendant probably recognized at the time that he was carry-

ing a gun, that he was committing robbery by taking something that belonged to someone else, and that he may have had the motive to profit thereby. The doctor further stated that the more that defendant recalled concerning an incident, the greater was the likelihood that he knew what he was doing at the time, but he felt that the marked impairment of defendant's judgment affected his realization and appreciation of the consequences of his acts.

Appellant now contends that the evidence was insufficient to support a finding that he had the specific intent to steal when he robbed Fuhrer and the patrons of the Bungalow Inn; that the trial court's failure to find that appellant possessed the specific intent to attempt murder of the police officer, as charged, precluded the court from finding that appellant possessed the specific intent to steal at the time he committed the robberies; and that subjecting appellant, as a chronic alcoholic, to criminal sanctions for acts committed while he was intoxicated constitutes cruel and inhuman punishment prohibited by the Eighth Amendment of the federal Constitution.

Appellant, as heretofore set forth, admitted the physical acts constituting the four offenses of which he was convicted, but relied upon the defense of diminished capacity and he now contends that there was insufficient evidence to the effect that he entertained the requisite specific intent to commit the two robberies. ■ A mental disease or defect not amounting to legal insanity may impair the accused's ability to form that specific intent which constitutes an essential element of the crime charged, and evidence tending to prove or disprove the existence of that particular mental state is admissible. (*People* v. *Wells,* 33 Cal.2d 330, 346-347 [202 P.2d 53] ; *People* v. *Anderson,* 63 Cal.2d 351, 364-366 [46 Cal.Rptr. 763, 406 P.2d 43].) ■ One cannot be held responsible for the criminal consequences of an act when he is incapable of achieving the specific intent which constitutes an essential element of the crime. (*People* v. *Gorshen,* 51 Cal.2d 716, 727 [336 P.2d 492].) ■ Although no act committed by any person while voluntarily intoxicated is rendered less criminal by reason of that condition (Pen. Code, § 22), yet whenever specific intent constitutes an essential element of the crime, the jury may take the person's intoxication into consideration in determining the purpose, motive or intent with which he committed the act. (*People* v. *Sanchez,* 35 Cal.2d 522, 526-528

[219 P.2d 9]; *People* v. *Modesto,* 59 Cal.2d 722, 730 [31 Cal. Rptr. 225, 382 P.2d 33].)

Appellant testified that he drank constantly for several days before these events occurred, that he was very intoxicated and could not recall all of the incidents constituting the criminal episodes. Appellant claims that the evidence relating to his capacity to form the specific intent requisite for each crime charged was the same. Therefore, he asserts that when the court found a reasonable doubt that appellant entertained the specific intent to attempt to murder, this implied that a reasonable doubt existed in the court's mind as to appellant's capacity to form specific intent of any kind. Appellant concludes that the court erred in finding him guilty of the two robbery charges.

Appellant does not assert that he was incapable of committing or did not possess the general criminal intent essential to commit the crimes of kidnaping or assault with a deadly weapon. (*People* v. *Oliver,* 55 Cal.2d 761, 768 [12 Cal.Rptr. 865, 361 P.2d 593]; *People* v. *Butts,* 236 Cal.App.2d 817, 827 [46 Cal.Rptr. 362].) For this court to reverse a criminal conviction on the ground of insufficiency of the evidence ". . . 'it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. . . .'" (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].) The trial court did not find appellant's capacity to form a specific intent substantially impaired, but observed, ". . . I think the real question in this case is whether or not by the long years of drinking he has so impaired his mental capacity as to destroy part of his own mind to the point that his ability to form specific intent is impaired, I think that he had sufficient intent and capacity to form the intent to rob." . . .

The evidence supports the trial court's conclusions. Appellant clearly recalled the manner in which his drinking spree commenced, the places he visited, the precise quantities and nature of the alcoholic beverages that he consumed, and the incidents relative to his trip to Long Beach. He knew that he pointed his gun at Roy Fuhrer and demanded his money, as substantiated by Doctor Ditman's testimony that appellant probably realized that in committing robbery he was taking something that did not belong to him with the motive to profit thereby. Appellant also recalled entering the bar at the Bungalow Inn where a man was working on a cigarette vending machine and he recognized that the man possessed a large

quantity of money. He knew that he commanded that man and all the patrons in the bar to give him their money, as further substantiated by Doctor Ditman's testimony concerning appellant's comprehension that he had a gun, that he took money from the people at the bar, forced them into a back room and fled with their money.

The court's finding that appellant did not have the specific intent to commit attempted murder is not inconsistent with its findings that he did conceive the specific intent to commit the two armed robberies. " '. . . each count in an indictment or information, which charges a separate and distinct offense must stand upon its own merit, and . . . a verdict of either conviction or acquittal upon one such charge has no effect or bearing upon other separate counts which are contained therein. . . .' " (*People* v. *Amick,* 20 Cal.2d 247, 252 [125 P.2d 25]; *People* v. *Ranney,* 123 Cal.App. 403, 406 [11 P.2d 405]; *People* v. *Niles,* 227 Cal.App.2d 749, 753-754 [39 Cal.Rptr. 11].) The court found that appellant had the capacity and entertained the specific intent to commit the Fuhrer and Bungalow Inn robberies, but expressed a reasonable doubt that appellant possessed the specific intent to kill Officer Goldsmith since the evidence supported instead the inference that appellant was severely frightened and intended merely to escape. Appellant commenced running when he left the bar and continued to flee until he realized that he was being pursued and turned to attack his pursuer. The circumstances giving rise to the assault on Officer Goldsmith were separate and distinct from the facts surrounding the prior robberies, and the court was justified in determining that although appellant did not possess the specific intent to kill the officer, he did possess the specific intent to commit the robberies.

Appellant cites no authority for his final contention that he may not be subjected to criminal sanctions for acts committed while intoxicated as a result of a chronic alcoholic condition. The federal courts have determined that an individual may not be confined for being addicted to the use of narcotics (*Robinson* v. *California,* 370 U.S. 660 [8 L.Ed.2d 758, 82 S.Ct. 1417]) and that criminal sanctions should not be imposed upon a chronic alcoholic for appearing in public in his diseased condition (*Easter* v. *District of Columbia,* 361 F.2d 50 [124 App.D.C. 33]; *Driver* v. *Hinnant,* 356 F.2d 761) because this would violate the principles of the Eighth Amendment to the federal Constitution. From these prece-

dents we may infer that the law prohibits the punishment of an individual for incurring and suffering a particular chronic condition or illness. (*In re Carlson,* 64 Cal.2d 70, 72-73 [48 Cal.Rptr. 875, 410 P.2d 379].) However, neither narcotics addiction (*People* v. *Bowens,* 229 Cal.App.2d 590, 601 [40 Cal.Rptr. 435]) nor chronic alcoholic intoxication (*Driver* v. *Hinnant, supra,* 356 F.2d 761, 764) confers immunity from criminal prosecution or conviction. The trial court, on substantial evidence, properly determined that appellant had the capacity to form and did form the specific intent to commit the robberies and the general criminal intent to commit the crimes of kidnaping and assault with a deadly weapon.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 5, 1968.