449 P.2d 119

The STATE of Utah, Plaintiff and Respondent,

v.

Lawrence Mack **HOLT,** Defendant and Appellant.

No. 10772.

Supreme Court of Utah.

Jan. 3, 1969.

Jimi Mitsunaga, Legal Defender, Salt Lake City, for appellant.

Phil L. Hansen, Atty. Gen., LeRoy S. Axland, Asst. Atty. Gen., Salt Lake City, for respondent.

CALLISTER, Justice:

Defendant, Holt, appeals from a verdict and judgment of first degree murder with a recommendation of leniency. He was sentenced to life imprisonment.

On April 14, 1966, defendant shot and killed Bernice King and wounded Richard Allen in an alley behind Clark's Cafeteria, in the vicinity of 33rd South and State Street in Salt Lake City, Utah. The defendant and decedent had previously been involved in a romantic relationship, which decedent had terminated without defendant's concurrence. Not only was there a romantic attachment, but defendant, an illiterate, had been dependent on Mrs. King's assistance in performing tasks such as banking. The severance of this relationship caused a marked deterioration in the behavior of defendant, which was characterized by an increased consumption of alcohol and erratic actions.

Defendant pleaded not guilty and not guilty by reason of insanity. Two court-appointed psychiatrists, a Dr. Moench and a Dr. Pace, testified that in their opinion defendant was temporarily insane at the time of the incident. Each based his diagnosis upon an interview of approximately an hour and a half, during which time defendant related what happened, and an evaluation of his responses and reactions was made. Dr. Moench found defendant seriously disorganized a week prior to the incident and that defendant's knowledge of the nature and quality of his acts and his ability to discern right and wrong were seriously impaired. In Dr. Moench's opinion defendant was not malingering because of his limited intellect, education, and imagination; he found his capacity to form an intent to kill and to premeditate seriously impaired. Dr. Pace concurred substantially with the diagnosis and observed that defendant's ability to discern right and

wrong was closer to being destroyed than intact. Dr. Pace stated that in his opinion defendant's action cannot be explained by mere temper or jealousy, and suggested the following additional factors: control, altering states of consciousness and awareness, the effects of alcohol and his tolerance thereof, and his intelligence. Upon cross-examination the psychiatric testimony was weakened by an admission that Holt could have lied during the interview and that he had failed to mention certain facts which might have made a difference in the diagnosis. It is noteworthy that in the prosecution's argument to the jury it was emphasized that the doctor's conclusions were based on a false premise, i. e., defendant did not reveal to them any details which tended to indicate deliberation or premeditation.

Defendant contends that the evidence does not justify the verdict of murder in the first degree on the ground that the testimony of the psychiatrists was unrebutted that defendant was insane at the time of the act.

In Utah, the legal test of insanity encompasses the rule promulgated in M'Naghten's Case and the irresistible impulse test.[1] The presumption of sanity prevails only until such time as evidence is received at the trial which tends to show insanity; then it is the duty of the trial judge to determine whether as a matter of law there is sufficient evidence to remove the presumption of sanity. When the court determines that there is some evidence which tends to show the accused was insane at the time of the alleged offense, it becomes the court's duty to submit such question to the jury with instructions indicating that the issue of insanity should be determined solely upon the evidence, and if they entertain a reasonable doubt about that issue, defendant is entitled to an acquittal.[2]

* * * The question of the sanity or insanity of any one accused of the commission of a crime is a question of fact primarily for the jury to determine. Courts should not set aside a jury's verdict, unless it appears from the whole record that the jury, without reason and in disregard of the uncontradicted testimony, rendered its verdict contrary to such testimony.[3]

In Dusky v. United States,[4] the issue was whether the trial court erred in overruling the defense's motion for acquittal on the ground that the prosecution failed to produce one single psychiatric witness to sustain the burden of proving sanity. The court observed:

---

1. State v. Poulson, 14 Utah 2d 213, 381 P.2d 93 (1963).
2. State v. Green, 86 Utah 192, 40 P.2d 961 (1935).
3. State v. Hadley, 65 Utah 109, 114, 234 P. 940, 942 (1925).
4. 295 F.2d 743, 754, 757 (C.A. 8th 1961).

This and other courts have said that expert opinion as to insanity rises no higher than the reasons upon which it is based, that it is not binding upon the trier of the facts, and that lay testimony can be sufficient to satisfy the prosecution's burden even though there is expert testimony to the contrary. [Citations omitted.]

\* \* \* \* \* \*

\* \* \* There is nothing essentially sacred or untouchable in expert testimony. The mere fact that the primary evidence on one side may be typified as expert in character while that on the other is exclusively from the mouths of lay witnesses and from lay facts must not of itself serve to destroy the jury's traditional function.[5]

In People v. Wolff,[6] four psychiatrists testified that the defendant was insane; the court stated:

\* \* \* It is only in the rare case when "the evidence is uncontradicted and entirely to the effect that the accused is insane" [citation omitted] that a unanimity of expert testimony could authorize upsetting a jury finding to the contrary. While the jury may not draw inferences inconsistent with incontestably established facts [citation omitted], neverthe-

less if there is substantial evidence from which the jury could infer that the defendant was legally sane at the time of the offense such a finding must be sustained in the face of conflicting evidence, expert or otherwise, for the question of weighing that evidence and resolving that conflict "is a question of fact for the jury's determination" [citation omitted]. \* \* \*

\* \* \* it is settled that "the conduct and declarations of the defendant occurring within a reasonable time before or after the commission of the alleged act are admissible in proof of his mental condition at the time of the offense." \* \* \*

In the instant action, the following facts, in their approximate time sequence, were adduced from various lay witnesses: About two to two and a half months prior to Mrs. King's death, the relationship between her and the defendant had changed. Defendant was deeply disturbed and attempted to contact her and effect a reconciliation. On February 27, 1966, defendant engaged in an altercation at the China Doll Cafe, when he attempted to pull Mrs. King bodily from Mr. Allen's presence. On March 15, 1966, he purchased a .32 caliber automatic pistol and 17 cartridges, informing the

5. Also see People v. Cole, 8 Mich.App. 250, 154 N.W.2d 579 (1967); Brock v. United States, 387 F.2d 254 (C.A. 5th, 1967); 17 A.L.R.3d, Anno.: Insanity—Proof, § 7 [a], pp. 179–180.

6. 61 Cal.2d 795, 40 Cal.Rptr. 271, 276, 277, 394 P.2d 959, 964, 965 (1964).

.merchant that the gun was for his former wife. About three weeks prior to Mrs. King's death, defendant warned her brother-in-law, Michael Rich, that she better be back or that she would be sorry. Four days prior to the shooting, Mary Lou Lemon observed the pistol in the glove compartment of the accused's automobile. On the day of the shooting, defendant withdrew the money he had in a joint savings account with Mrs. King, and stated that his sister was upset with him and that he'd have to do his own banking in the future (previously Mrs. King had done most of his banking). At about six o'clock in the evening, in a conversation with Mrs. Lemon, defendant informed her that he was going to get even with a few people before ten o'clock that night; one was a person who had hurt him, and the other was one with whom he used to go. Edith Larsen, a resident in the area of Clark's Cafeteria, observed a person walking back and forth, waiting in the vicinity of the parking area. Mrs. King had phoned Richard Allen and requested that he pick her up at the back door of Clark's, as there was a little trouble. Immediately prior to firing of the first shot, defendant stated: "Allen, don't take another step." After killing Mrs. King and wounding Mr. Allen, defendant was observed running from the scene. Defendant next appeared at the Clayburn residence and informed 15-year-old Doyle Clayburn that he had shot a lady; the two listened for news on the radio about the incident and phoned a radio station for information. Defendant phoned Helen Virginia Smith and told her that he had shot Mrs. King twice and killed her. Defendant conversed with others on the telephone and then fled to Brigham City, Utah, where he remained in a motel for the night. The next day he returned to Salt Lake and conferred with friends at the home of Henry Simmonetti; and, upon their advice that he'd be hunted down and perhaps shot by the police, he surrendered himself to the local authorities.

The foregoing oral declarations and actions of the defendant constituted substantial evidence from which the jury could reasonably conclude that he was at all times aware of his actions and that they were wrong and improper. From the manner in which the evidence indicated that the crime was conceived, planned and executed, there was factual support for the determination by the jury that defendant did have the ability to devise and execute a deliberate plan.

Dr. Moench testified that the defendant's behavior, i. e., his running from the scene and his informing others of his actions, was not inconsistent with the diagnosis. In People v. Wolff [7] the court observed that a psychiatric diagnosis does not compel the

7. Footnote 6, supra.

conclusion that on the very different issue of legal insanity the evidence is insufficient as a matter of law to support the verdict.

At page 281 of 40 Cal.Rptr., at pages 968–969 of 394 P.2d, the court stated:

> * * * To hold otherwise would be in effect to substitute a trial by "experts" for a trial by jury, for it would require that the jurors accept the psychiatric testimony as conclusive on an issue—the legal sanity of the defendant—which under our present law is exclusively within the province of the trier of fact to determine.

To guard against misunderstanding of our rules it is pertinent to observe that we do not reject expert testimony simply or solely because it may *also* answer the ultimate question the jury is called upon to decide [citation omitted]; but, strictly speaking, a psychiatrist is not an "expert" at all when it comes to determining whether the defendant is *legally* responsible under the terms of the California rule. Thus Dr. Alfred K. Baur, psychiatrist and Chief of Staff of the Veteran's Administration Hospital at Salem, Virginia, has recently warned that the question of a defendant's "insanity" (which he defines as *legal* irresponsibility) should not even be asked of members of his profession: "As psychiatrists, we can testify as to our findings regarding the 'mental condition' of the person in question * * *; but, to ask the psychiatric witness, 'Doctor, in your opinion is this person insane (or sane)?' is the same as asking an expert witness in a criminal trial, 'In your opinion, is the accused guilty or not guilty?' Yet, many lawyers ask psychiatrists to state opinions on the sanity of the accused and, unfortunately, many psychiatrists perpetuate the problem by accepting the role of oracle and answering the question, even thinking it properly within their functions." (Baur, Legal Responsibility and Mental Illness (1962) 57 Nw.U.L.Rev. 12, 13; * * *.)

In the instant action,

> * * * the testimony respecting the insanity of the appellant is not so positive or conclusive that it can be said as matter of law that the jury, in returning a verdict of guilty, acted arbitrarily or failed to give consideration and regard to the evidence in the case. * * *[8]

The other points of appeal are without merit, the judgment of the trial court is affirmed.

CROCKETT, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.

8. State v. Hadley, Footnote 3, supra.