The STATE of Utah, Plaintiff and Respondent,

v.

William Thomas SESSIONS, Defendant and Appellant.

No. 17019.

Supreme Court of Utah.

March 30, 1982.

G. Fred Metos, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Robert N. Parrish, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

STEWART, Justice:

The defendant, William Thomas Sessions, appeals his conviction of forcible sexual abuse, a third degree felony.[1] This appeal

---

1. Forcible sexual abuse is defined by Utah Code Ann., 1953, § 76–5–404 (Supp.1979) as follows:

(1) A person commits forcible sexual abuse if, under circumstances not amounting to

is based solely on the trial court's refusal to give Sessions' proffered jury instruction on diminished capacity. We affirm.

On June 9, 1979, Sessions entered an elevator on the third floor of a parking garage in Salt Lake City. A young woman was in the elevator on her way to the fifth floor where her car was parked. After the elevator doors closed, Sessions exposed his genitals, forcibly touched her breasts and genital area, grabbed her hand and pulled it to his genital area, all the while performing acts of physical self arousal. When the elevator reached the fifth floor, Sessions restrained her departure. She was finally able to exit the elevator on the tenth floor. On the day of the incident, defendant had smoked eight or ten marijuana cigarettes and had consumed two or three cans of beer. He testified that when he entered the elevator and saw the female victim, he succumbed, he claimed, to the urge to expose himself because of his anger toward his father.

Two psychiatrists testified concerning Sessions' mental condition. They agreed that Sessions suffered from a mental defect classified as a personality disorder. They disagreed, however, on his ability to conform his actions to the law. One psychiatrist stated that Sessions did not consciously intend to sexually gratify himself and had no control over his acts, despite his realization that his behavior was wrong or illegal. The other psychiatrist testified, based on Sessions' selection of his victim from among many potential victims, that Sessions had the capability to conform his behavior to the law despite his alcoholic and marijuana intoxication. The psychiatrists also disagreed on whether the defendant's motive in exposing himself was sexual or simply an attempt to release frustration and anger.

The defense of diminished capacity, which has been adopted in some jurisdic-

tions, is defined as a mental disease or defect, not amounting to legal insanity, that impairs a defendant's ability to form the specific intent necessary to prove certain crimes. *People v. Wilson*, 261 Cal. App.2d 12, 67 Cal.Rptr. 678 (1968); *People v. Anderson*, 63 Cal.2d 351, 46 Cal.Rptr. 763, 406 P.2d 43 (1965); *People v. Wells*, 33 Cal.2d 330, 202 P.2d 53 (1949);[2] *State v. Padilla*, 66 N.M. 289, 347 P.2d 312 (1959); *cf. State v. Francis*, 284 Or. 621, 588 P.2d 611 (1978). Unlike the insanity defense, diminished capacity is not a complete defense; in most cases it reduces a defendant's guilt to a lesser included offense which requires only a general intent. Generally, diminished capacity has been employed in homicide cases to reduce first degree murder to second degree murder or manslaughter. See 2 Wharton's Criminal Law § 104 (14th ed. 1979); W. LaFave & A. Scott, Handbook on Criminal Law § 42 (1972); Arnella, The Diminished Capacity and Diminished Responsibility Defenses: Two Children of a Doomed Marriage, 77 Colum.L.Rev. 827 (1977); Note, 67 Calif.L. Rev. 706 (1979); Annot., 22 A.L.R.3d 1228 (1968).

Sessions relies on *State v. Green*, 78 Utah 580, 6 P.2d 177 (1931), as authority for the proposition that diminished capacity is a partial defense in Utah. In *Green*, the Court stated:

While an accused is not entirely relieved from responsibility for the commission of a crime on account of insanity unless the insanity be of such a nature and degree that he did not know the nature or quality of his acts, or that he did not know the act was wrong, or that his mind was so impaired by disease that he was unable to control his act, nevertheless a mental disease falling short of any of these effects may, where a partic-

---

rape or sodomy, or attempted rape or sodomy, the actor touches the anus or any part of the genitals of another, or otherwise takes indecent liberties with another, or causes another to take indecent liberties with the actor or another, with intent to cause substantial emotional or bodily pain to any person or

with the intent to arouse or gratify the sexual desire of any person, without the consent of the other, regardless of the sex of any participant.

2. *Wells* is credited with beginning the diminished capacity instruction in California.

ular intent is a necessary element of a higher degree of a crime, have the effect of reducing the degree of such crime. If the appellant was so inflicted with insanity that he was "mentally incapable of deliberating or premeditating, and to entertain malice aforethought, and to form a specific intent to take the life of the deceased, in such event the jury should not find him guilty of murder in the first degree." [78 Utah at 602, 6 P.2d at 186, quoting in part from *State v. Anselmo*, 46 Utah 137, 148 P. 1071 (1915)]

Although at the time this Court decided *State v. Green, supra,* the governing definition of legal insanity in this jurisdiction was the M'Naghten test coupled with the irresistable impulse standard, *State v. Poulson,* 14 Utah 2d 213, 381 P.2d 93 (1963); *State v. Holt,* 22 Utah 2d 109, 449 P.2d 119 (1969), the Legislature in its general revision of the criminal law in 1973, abandoned the M'Naghten and irresistible impulse test and adopted the A.L.I. Model Penal Code standard. Utah Code Ann., 1953, § 76–2–305 has remained unchanged since its 1973 enactment. It provides:

(1) In any prosecution for an offense, it shall be a defense that the defendant, at the time of the proscribed conduct, as a result of a mental disease or defect, lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

(2) As used in this section, the terms "mental disease" or "defect" do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

The State argues that the defense of diminished capacity no longer has a place in Utah law because of the 1973 revision of the criminal code. It contends that the Legislature by adopting the Model Penal Code test for insanity also intended to reject the diminished capacity defense. The

broadening of the insanity test to conform to current accepted principles of moral responsibility has, in effect, displaced diminished mental capacity as a defense in general intent crimes to whatever extent it may have been deemed applicable. To the extent that the diminished capacity defense was intended to ameliorate the rigid and narrow view of insanity which formed the basis of the M'Naghten test, the State's contention has merit. Therefore, to whatever degree the defense of diminished capacity has been recognized in general intent crimes, the A.L.I. test of insanity has dispensed with the need for a diminished capacity defense.

However, we are not of the view that the broader insanity test adopted by the Legislature has completely displaced the principle announced in *Green.* Although insanity is a complete defense, § 76–2–305, diminished capacity is not. Like intoxication, see § 76–2–306, diminished mental capacity may negate the existence of a particular intent, but when it does, a defendant is not usually thereby absolved from all criminal liability. Even though insanity as such is not in issue, the trier of fact should have the benefit of whatever evidence bears on the intent of a defendant when a specific intent or purpose is an element of the crime. Therefore, although the State did not adopt Section 4.02 of the Model Penal Code,[3] basic rules of evidence pertaining to materiality and relevance require that a defendant have the right to adduce evidence which would tend to disprove the existence of a specific intent.

The precise issue in this case is whether an instruction on diminished capacity should have been given. Based on *Green,* defendant proposed the following instruction:

The defendant is charged with an offense requiring a specific intent or mental state, that is the intent to sexually arouse or gratify himself. If you find from all

---

**3.** The Model Penal Code Tentative Draft Section 4.02 states:

Evidence that the defendant suffered from a mental disease or defect shall be admissible

whenever it is relevant to prove that the defendant did or did not have a state of mind which is an element of the offense.

the evidence that the defendant suffered from a mental abnormality, diminished capacity, that impaired him to the extent that he was either unable to or prevented from forming such a mental state then you must aquit him of the offense charged. However, such a diminished mental condition is no defense to a crime when the mental state required is one of "recklessness." This means that if the defendant's diminished mental condition or capacity merely makes him [un]aware [sic] of circumstances that a reasonable person should be aware of, or disregard those circumstances, then this diminished mental condition is not a defense to such a crime.

Defendant argues that the trial court's refusal to deliver this instruction was prejudicial error. We disagree.

■ The intent that must be proven in a forcible sexual abuse charge is twofold: 1) a general intent to take indecent liberties or touch the anus or genitals of another without that person's permission, see *State in re J.L.S.*, Utah, 610 P.2d 1294 (1980), and 2) the specific intent or purpose to cause substantial emotional or physical pain or to sexually arouse or gratify any person. Whether Sessions possessed the requisite specific criminal intent to convict of forcible sexual abuse was the central contested issue for the jury to decide in this case.[4]

The trial court properly instructed the jury on the elements of the crime of forcible sexual abuse, the specific intent required to convict of that crime, the State's burden of proof, the effect of intoxication, and the elements of the lesser included offense of lewdness.[5] See generally *State in*

*re L.G.W.*, 641 P.2d 127 (1982). The instructions adequately directed the jury to determine whether Sessions had the requisite specific intent in light of all the circumstances.

■ The trial court properly refused to give defendant's proposed diminished capacity instruction. The instruction did not explain that if the jury did not find the requisite specific intent for forcible sexual abuse, it could nevertheless find the general intent necessary to convict the defendant of the crime of lewdness.

Moreover, it is not essential to a fair trial that an instruction use the term diminished capacity or that the concept be explained in a separate instruction when the jury is also instructed on a lesser included offense requiring only a general intent. See *State v. Stockett*, 278 Or. 637, 565 P.2d 739 (1977). An adequate explanation of the specific intent or purpose which must be found is sufficient. Had the jury believed the defendant's psychiatric testimony, it no doubt would have convicted of the lesser included offense of lewdness, but it was not error for the Court to deal with diminished capacity in the manner it did although it might have been preferable to have focused an instruction squarely on the diminished capacity defense if a proper instruction had been proffered. The instruction which the Court gave on specific intent and the lesser included crime of lewdness gave the defendant whatever benefit defendant would have had, had a diminished capacity instruction been given. *Cf. People v. Chapman*, 261 Cal.App.2d 149, 67 Cal.Rptr. 601 (1978). Had the jury found that the evidence did not support the requisite specific

4. The defendant presented no insanity defense.

5. The lewdness instruction stated:

Before you can convict the defendant of the crime of Lewdness, you must find from the evidence, beyond a reasonable doubt, all of the following elements of that crime:
1. That on or about June 9, 1979, in Salt Lake County, State of Utah, the defendant, William T. Sessions, exposed his genitals or private parts or performed any other act of gross lewdness.

2. That he did so under circumstances which he should have known would likely cause affront or alarm, or did such an act in a public place; and
3. That the defendant acted intentionally, or knowingly or recklessly.
If you believe that the evidence establishes each and all of the essential elements of the offense beyond a reasonable doubt, it is your duty to convict the defendant. On the other hand, if the evidence has failed to so established one or more of said elements then you should find the defendant not guilty.

intent or purpose to arouse or gratify the defendant's sexual desires, it could, and no doubt would, have convicted him of lewdness.

It is not error to refuse a proposed instruction if the point is properly covered in the other instructions. *State v. Spencer,* 28 Utah 2d 12, 497 P.2d 636 (1972); *State v. Miller,* 24 Utah 2d 1, 464 P.2d 844 (1970); *State v. Martinez,* 21 Utah 2d 187, 442 P.2d 943 (1968).

Affirmed.

HALL, C. J., HOWE, and OAKS, JJ., and CALVIN GOULD, District Judge, concur.