**STATE of Utah, Plaintiff and Respondent,**

v.

**Frank John BUSH, Defendant and Appellant.**

**No. 17188.**

Supreme Court of Utah.

May 18, 1982.

1. U.C.A., 1953, 76–5–202.

2. U.C.A., 1953, 76–5–302.

John T. Caine, Ogden, for defendant and appellant.

Robert B. Hansen, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

PER CURIAM:

Defendant was convicted at a non-jury trial of two counts of attempted homicide,[1] two counts of aggravated kidnapping[2] and one count of aggravated robbery.[3] He received statutory sentences to run concurrently.

The offenses arose out of a day of terror in which the believable, admissible evidence revealed the following facts. A car was taken at gunpoint from a Mr. Brown by defendant and his girlfriend of several months, one Ms. Cox. Defendant threatened to kill Brown, and ordered him out of the car. Defendant and Ms. Cox, thinking Brown might alert the police (which he did), then stole a second car. The two occupants of the second car, Mr. Lund and Ms. White, were ordered into the back seat and taken

3. U.C.A., 1953, 76–6–302.

along. Defendant told the couple he would blow their heads off if given any trouble. Lund was forced to fill the gas tank. The defendant referred to himself as a drunk-crazed murderer.

Defendant sensed that someone was following him and accused his girlfriend of being a part of it. He took the case she had, which contained guns and drugs, and threw it, together with his shoes and other items, out of the car, thinking they may contain a tracking device. He again decided to switch cars and asked Ms. White if she knew anyone having a car, who would loan it and not report it to the police. Ms. White, fearing for her life, suggested her cousin. He let her out of the car at the place she pointed out and drove around the block. Fearing Ms. White would call the police (which she did), defendant left at high speed. Defendant was spotted by pursuing officers and was apprehended when he failed to negotiate a turn and crashed. In the meantime, he had beaten Ms. Cox, who was black and blue and covered with blood. He had shot at her legs twice, but missed. He also shot twice at the officers chasing him.

A Dr. Iverson testified at trial that, at the time of the offense, defendant was psychotic and could not control his behavior, but that sometimes such people are very lucid, can think clearly and engage in rational behavior. He also said that defendant had told him that had there been an officer present, he would not have committed these crimes. The doctor further testified that defendant did know that what he was doing was against the law and that he could distinguish right from wrong.

Mr. Lund and Ms. White testified that during the ordeal, the defendant spoke coherently and followed directions without difficulty. They said he handled the car very well and was a good driver. The officers who apprehended him confirmed his driving ability, and that at the time of arrest he was calm and coherent, had no difficulty in walking and that he did not appear to be intoxicated. The jailer said

that the next day, defendant had pulled some of his hair out, was lying on the floor and appeared to be sluggish and incoherent as if he were under the influence of liquor. Counsel for defendant volunteered that defendant's psychosis and delusions resulted from self-induced intoxication.

On appeal, defendant contends that it was error to dismiss insanity as a defense on the facts presented. Furthermore, defendant contends that he had no specific intent to commit the offenses because he was too drunk, albeit the intoxication was voluntarily imposed.

U.C.A., 1953, 76–2–305 reads as follows:

(1) In any prosecution for an offense, it shall be a defense that the defendant, at the time of the proscribed conduct, as a result of mental disease or defect, lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.

(2) As used in this section, the terms "mental disease" or "defect" do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

The trial court did not find that the defendant "lacked substantial capacity to appreciate the wrongfulness of his conduct." The court expressly found the opposite, as evidenced by the following pronouncement of the court:

... the defendant was able to distinguish between right and wrong, and was able to conform his conduct to the requirements of law. The evidence on that point is to a large extent brought out by all of the witnesses, but the compelling thing is his actions at being sighted by the police officer during these events.

This conclusion by the factfinder is not impeachable on review if supported by the record.[4]

The defendant cannot find comfort in saying he was intoxicated at the time of the offenses. U.C.A., 1953, 76–2–306 specifical-

4. *State v. Holt*, 22 Utah 2d 109, 449 P.2d 119 (1969), and cases cited therein.

ly states: "Voluntary intoxication shall not be a defense ... unless [it] negates the existence of the mental state which is an element of the offense." The trial court dispelled any claim that defendant had a mental state that prevented a specific intent to accomplish what he did, by the language used by the court and quoted above. The instant case is very similar to the facts relating to "intoxication" and "specific intent" found in *State v. Sisneros*.[5] In that case, this Court approved instructions given by the court as to the meaning of the statute. We believe and hold that the issues raised in *Sisneros* are substantially the same as are involved here, and that it is dispositive of this case.

The convictions and judgments are affirmed.