[Crim. No. 8779.   Second Dist., Div. One.   Nov. 18, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. HENRY FLOREZ SANDOVAL, Defendant and Appellant.

Manuel Valenzuela for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Lawrence R. Tapper for Plaintiff and Respondent.

WOOD, P. J.—Defendant was accused of assault with a deadly weapon. In a trial by jury he was convicted. Probation was denied and he was committed to the Youth Authority for the term prescribed by law.

On July 19, 1962, Joe Delgado, 14 years of age, was visiting his grandmother who lived in an apartment house in Los Angeles. About 5:30 p.m., after he had knocked on the door of the manager's apartment, a boy therein by the name of Carl Parker opened the door. Joe entered the apartment and sat at a round table with Carl Parker and other boys by the names of Paul Almagour and Henry Sandoval (the defendant). Joe had known Henry about three weeks and there had been no trouble between them. While the boys were talking about ghosts and mummies, the defendant (Henry) brought out a .22-caliber six-chamber revolver which had one bullet or cartridge in it, and he pointed the revolver toward Joe, who told him not to do that. He kept pointing the revolver at Joe, who continued asking him not to do it. Before so pointing the revolver he would spin the cylinder. He spun it 10 or 15 times. While pointing it he had his finger on the trigger, and on five or six occasions he pulled the trigger. Joe was frightened. On one occasion, Joe grabbed the barrel of the revolver and pushed it away. On another occasion, the defendant showed Joe how to place the hammer so that the revolver would not be cocked. Then Joe gave the revolver back to defendant who placed it in the waistband of his trousers. About that time Paul went to the washroom, and

Joe, Carl, and the defendant remained at the table. While Joe and Carl were talking, there was a "big boom" or "bang" and Joe was shot in the right side of his chest. Then Joe saw that the defendant was holding the revolver. While Joe was running toward the washroom, the defendant seized him and put his finger in the wound and tried to remove the bullet, but he could not remove it. They put Joe on the porch and went away. The defendant told him to say that a mulatto had shot him. Paul's sister, who came to the porch, called Joe's grandmother. An ambulance came and took him to a hospital where he remained 10 days.

Officer Hansen testified that he arrested defendant and at that time he took from him the revolver (exhibit 1) in which there was an expended .22 short "round."

Officer Berteaux testified that on July 20 he asked defendant to tell what had happened on the previous evening, and he replied as follows: When he arrived at the apartment, Almagour gave him a .22 "bullet" which he placed in the gun, and he was handling the gun when Joe Delgado arrived. He pointed the gun at Joe and pulled the trigger, knowing that the gun would not fire because the bullet was in the wrong chamber. He did this because he was trying to frighten Joe. When he pointed the gun at Joe the sixth or seventh time and pulled the trigger, then gun fired and hit Joe in the chest. He told Joe that, if the police asked him, he should say that a colored person shot him while he was in the alley. That he had said this to Joe because he (defendant) had been in trouble before and he felt this would go badly with him.

Paul Almagour, called as a witness by defendant, testified as follows: When Joe came into the apartment the gun was on the table and he (witness) pointed the gun at Joe and said, "This is a stick-up," but in saying that he was jesting. Joe was laughing. While the boys were talking they, except Joe, pointed the gun all over the ceiling and "just around" in rotation. Joe did not appear to be scared. He (witness) was in the restroom when the gun was fired, but when he returned to the other room Joe said that he had been shot. He told Joe to say that a mulatto shot him.

Carl Parker, called as a witness by defendant, testified as follows: When Joe arrived at the apartment, Paul, who had the gun in his hand, said to Joe: "Give me your money or your life." The boys sat at the table, and the gun was being pointed all around the room in every direction.

On cross-examination, Carl said that the defendant pointed the gun at Joe about five times and pulled the trigger.

Defendant, 19 years of age, testified as follows: He pointed the gun at Joe a few times, and at the other boys, and in all directions. He had been spinning the cylinder. The other boys, except Joe, also pointed the gun in every direction. Joe had the gun in his hand while he was looking at it. When the gun fired, he (defendant) was not pointing at anyone in particular, and he thought that the bullet had hit the wall.

On cross-examination, the defendant said: When he pointed the gun at Joe and pulled the trigger, he was not trying to scare him, but he was playing. He pointed the gun at the other boys more times than they pointed the gun at him. They (apparently the boys other than Joe) brought up the subject of playing a game of Russian Roulette. His purpose in rotating the cylinder of the gun was to keep Joe from knowing where the bullet was. He (defendant) made sure where the bullet was by pulling a lever to the side. He knew there was a bullet in the gun when he intentionally pulled the trigger. He told the police that he was playing with the gun, and "naturally he [Joe] was probably scared. He did show it, though, naturally. I didn't tell him I was going to scare him." After the shooting he went home, returned to the apartment and told the police that he was the one who shot Joe.

Appellant contends that the evidence was insufficient to support the verdict. He argues that there was no showing that defendant attempted to injure Joe; and that the record indicates there was no criminal intent on his part, but it indicates that he and the others were playing and joking. The revolver with a cartridge in it was a deadly weapon (See *People* v. *Roshid*, 191 Cal.App.2d 692, 694 [12 Cal. Rptr. 794].) [*S*]*pecific intent* is not an element of the crime of assault with a deadly weapon [citation], and so where the evidence is sufficient to establish the character of the instrument as charged [a deadly weapon], it is not necessary for the prosecution to prove specifically that the defendant intended to injure the complaining witness. Such intent may then be implied from the doing of the unlawful act." (*People* v. *McCoy*, 25 Cal.2d 177, 194 [153 P.2d 315].) " 'A person must be presumed to intend to do that which he voluntarily and willfully does in fact do, and must also be presumed to intend all the natural, probable and usual consequences of his own voluntary acts.' " (*People* v. *Cornett*, 93 Cal.App.2d 744, 748 [209 P.2d 647] ; Code Civ. Proc., § 1963, subd. 3.)

█ In the present case it is clear that the appellant put the cartridge in the revolver and then, with reckless abandon and disregard of the rights and safety of Joe Delgado, did spin the cylinder and point the loaded revolver at Joe, pull the trigger, and shoot a bullet into his body. As above shown, the appellant admittedly played the game of "Russian Roulette" several times, with Joe as the frightened victim. As stated in *Thompson* v. *Prudential Ins. Co. of America*, 84 Ga. App. 214 [66 S.E.2d 119, 123], "[W]here one engages in a game of Russian Roulette in which all but one of the cartridges are removed from the cylinder of a revolver, the cylinder is spun, the revolver is placed by the participant to his head, and the trigger is voluntarily pulled without ascertaining the position of the cartridge in the chamber in its relation to the firing mechanism, and it occurs that when the trigger is pulled the gun fires and kills or injures the participant, his death or injury is no less intentional than had the gun been fully loaded and his death or injury cannot be said to have been the result of accidental or effected by accidental means. . . . One engaging in such a bizarre pass-time with a lethal weapon, if he be compos mentis, knows that he is courting death or severe injury, and will be held to have intended such obvious, and well known results, if he is killed or injured."

In the present case the evidence was sufficient to support the verdict of conviction.

█ Appellant contends further that the court erred in refusing to give his requested instruction which was as follows: "When a person commits an act or makes an omission through misfortune or by accident under circumstances that show no evil design, intention or culpable negligence, he does not thereby commit a crime, although the same act or omission committed under different circumstances and coupled with criminal intent would constitute a crime." Appellant argues that the evidence was sufficient to support his contention that the gun was fired by accident or through misfortune, and the jury should have been instructed to pass upon this question.

The jury was instructed that: "An assault with a deadly weapon is an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of another with a deadly weapon. ... The characteristic and necessary elements of the offense are the unlawful attempt, with criminal intent, to commit a violent injury upon the person of another, the use of a deadly weapon in that attempt, and the then present ability to accomplish the injury." Another

given instruction was, in part, as follows: "To constitute criminal intent it is merely necessary that a person intend to do an act which, if committed, will contitute a crime. When a person intentionally does that which the law declares to be a crime, such person is acting with criminal intent even though he may not know that such act is unlawful and even though there be no bad motive." Another given instruction stated, in part: "The intent with which an act is done is manifested by the circumstances attending the act, the manner in which it is done, the means used, and the sound mind and discretion of the person committing the act." In view of such given instructions, it is reasonable to assume that if the jurors believed that appellant "accidentally" shot Joe Delgado they would not have found him guilty of assault with a deadly weapon. The jury was instructed adequately.

It is to be noted that said requested instruction, so referred to by appellant, is not in the clerk's transcript or the reporter's transcript. It is set forth as "Exhibit A" attached to appellant's brief. The record does not show when the original requested instruction was filed. In respondent's brief it is stated in effect that the original file in the County Clerk's office shows that the instruction was filed on October 23, 1962. Since the final argument at the trial was concluded on October 22, 1962 (the preceding day), it would appear that appellant failed to comply with section 1093.5 of the Penal Code which requires that proposed instructions must be delivered to the court before commencement of argument.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.