[Crim. No. 502.   Fifth Dist.   Jan. 21, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. RAYMOND
DELBERT MORROW, Defendant and Appellant.

George W. Kell, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Daniel J. Kremer and James T. McNally, Deputy Attorneys General, for Plaintiff and Respondent.

CONLEY, P. J.—The defendant, Raymond Delbert Morrow, was charged in three separate indictments with crimes of violence against residents of Mariposa. First of all, he was accused of violating section 245 of the Penal Code on or about the 14th of September, 1967, by using force likely to produce great bodily injury against Irene Gonzales; the Penal Code section reads in part as follows: ''Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury is punishable by imprisonment in the State prison. . . .''

Next, he was charged with violation of Penal Code section 242 by assaulting Norman W. Garrett, the sheriff of Mariposa County, while the latter was engaged in the performance of his duties, and similarly of battery upon L. C. Scott, a deputy sheriff, while he was engaged in the performance of his duty. In the third information, the defendant was accused again of violating section 245 of the Penal Code by a similar assault on Irene Gonzales on or about November 12, 1967, and of the same crime against Elaine Rhoan. The three informations were ordered consolidated for trial and were disposed of at the same time; in the interest of clarity, the crimes originally contained in the three informations were referred to during the trial as counts.

At the end of the trial, the jury brought in verdicts as follows:

Count I, assault on Irene Gonzales on September 14, 1967: Guilty as charged.

Count II, battery upon Norman W. Garrett, sheriff, while in the course of official duty: Guilty of simple battery.

Count III, similar battery on L. C. Scott, deputy sheriff: Guilty of simple battery.

Count IV, assault on Irene Gonzales on November 12, 1967: Guilty as charged.

Count V, assault on Elaine Rhoan on November 12, 1967: Guilty as charged.

Thereafter, probation and a motion for a new trial having been denied, the court sentenced the defendant to state's prison on counts I and V to be served concurrently; count IV was dismissed as the court determined that the crime charged was part of the same act involved in count V; the sentence on each of counts II and III was six months in the county jail, the sentences to run concurrently, but the sentences on these misdemeanors were suspended and are to be dismissed when the felony sentences become final as to counts I and V.

The basic facts relative to the physical attacks were proven without question. Mrs. Irene Gonzales testified that on September 14, 1967, the facts as to what happened are clear. She was at home; at about 8 o'clock in the evening defendant came to the house; he had been drinking; they talked for a few minutes and then she made him a cup of coffee; he started arguing with her and kept it up; when she did not answer, he slapped her face, and he kept arguing and hitting her repeatedly; he knocked her to the floor, kicked her and continued to kick her; finally, when she brought him a cup of coffee, he threw it in her face; she went to the bathroom; he followed her and said he was going to kill her; he knocked her down again and started to choke her.

Norman W. Garrett, sheriff of Mariposa County, testified that he was on duty in the evening of September 14, 1967; in response to a telephone call from Mrs. Gonzales, he found her sitting in a chair in a nearby service station; she was crying and appeared to have been beaten. The sheriff and his deputy, Scott, did not find the defendant in the Gonzales house but located him walking in the street. They asked him to get into their car, which he did; they returned to the service station and picked up Mrs. Gonzales and took them both to the sheriff's office. Mrs. Gonzales had several bruises on her legs and face; her lip was bleeding; after pictures were taken of her bruises, she was taken to the hospital. Sheriff Garrett testified that Mr. Morrow had been placed in a room in the jail, and he and Deputy Scott advised Morrow that he was under arrest

and asked him to come to the booking counter. Morrow walked to the booking counter, but when he got there he became violent and said that he was not going to be put in jail. The sheriff told him to put his hands upon the counter so that he could be searched; then the defendant backed off; swore at the sheriff and struck at him, and Deputy Scott and another jailer had to help the sheriff wrestle the defendant to the floor; Sheriff Garrett testified that defendant hit his arm. The sheriff said he had known Morrow for several years. Officer Scott testified that he was on duty in the patrol car the night Sheriff Garrett told him to go to the Standard station, and he testified that at the time of the booking the defendant took a swing at Sheriff Garrett and also grabbed Scott by the front of the shirt; he said that he himself suffered bruises when defendant Morrow grabbed him.

Elaine Rhoan testified that she was in the Bootjack Bar on November 12, 1967, and that when Morrow began arguing with Irene Gonzales, Mrs. Gonzales started to leave but stopped to talk to Elaine Rhoan; Morrow began fighting with Irene Gonzales who pushed him back; he went to the bar; he got a glass and threw it; the glass hit Mrs. Rhoan above the left eye. The object thrown was a beer mug; it broke; she was left with a scar over her eyebrow.

Dr. Paul Levy, a qualified psychiatrist, was appointed by the court at the request of counsel for both sides to examine defendant as to his mental condition and to judge whether, in his opinion, at the time of the commission of the alleged crimes he had the mental capacity to form the intent to commit them.

Appellant presents these arguments on appeal:

1) There was evidence by the defendant and Dr. Levy that would support a conclusion that the defendant suffered from alcoholic amnesia on the critical occasions when he employed violence toward others, and that it would constitute cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution if he were to be held guilty of the several crimes charged;

2) The court was in error, it is claimed, by failing to instruct the jury that if the defendant was unconscious at the time of the commission of his alleged offenses he should have been acquitted;

3) The court erred in giving instructions on voluntary intoxication and in failing to instruct concerning involuntary intoxication;

4) In connection with the applicable assault section of the Penal Code (§ 245), there must be proof of a specific intent to injure the victim, and to sentence a defendant in the absence of such proof inflicts cruel and unusual punishment on him and deprives such defendant of due process of law in violation of the Sixth and Fourteenth Amendments of the United States Constitution.

The main argument which the appellant urges for a reversal is founded on the testimony of himself and the psychiatric witness, Dr. Levy, that he is an alcoholic and that his condition is such that when drinking, as here, he has periods of violent action against other people, which he does not remember. In other words, he claims that because of his alcoholism he suffers from blackouts, and that at the critical moments involved in the accusations against him he did so suffer and was unconscious of his violent acts and, therefore, innocent of crime. It should be remembered in this connection that the jury was not bound to accept his account of physical details of his condition. Dr. Levy made it clear that in diagnosing the case he had to assume that a writing relative to it, which emanated from the defendant, was true; the doctor himself did not observe the defendant during any of these alleged critical periods. We, thus, are presented with a situation which arises frequently in a jury trial: the jury was not bound to accept in detail the conclusion of the defendant and of the psychiatrist based wholly on what the defendant said with regard to unconsciousness. There were ample indications that, although the defendant was what is called an alcoholic and that he had been drinking heavily, nevertheless, he had knowledge of what he was doing.

But assuming that his self-serving declarations were true, it does not follow that he was not responsible for the violent actions constituting the charges which infringe the laws of this state. In this connection, the defendant relies principally upon federal decisions which have held that the state cannot legally imprison a man because of his status as a taker of drugs or an alcoholic. (*Robinson* v. *California,* 370 U.S. 660 [8 L.Ed.2d 758, 82 S.Ct. 1417]; *Easter* v. *District of Columbia,* 361 F.2d 50 [124 App.D.C. 33]; *Driver* v. *Hinnant,* 356 F.2d 761.) However, the United States Supreme Court has recently held that when a defendant is charged with doing an act, which is denounced as criminal under the law, it is no excuse to such a defendant to allege and prove also that he is an alcoholic; this is the essential holding in *Powell* v. *Texas,*

392 U.S. 514, 531-534 [20 L.Ed.2d 1254, 1267-1268, 88 S.Ct. 2145, 2154-2155], in which the United States Supreme Court refused to hold that an alcoholic, who was guilty under the law of appearing drunk in public, was excused for breaking the law concerning his appearance at a place other than at his own home. In the course of the opinion, Mr. Justice Marshall says: ''Appellant claims that his conviction on the facts of this case would violate the Cruel and Unusual Punishment Clause of the Eighth Amendment as applied to the States through the Fourteenth Amendment. The primary purpose of that clause has always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes; the nature of the conduct made criminal is ordinarily relevant only to the fitness of the punishment imposed. See, e.g., *Trop* v. *Dulles,* 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958); *State of Louisiana* ex rel. *Francis* v. *Resweber,* 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 (1947); *Weems* v. *United States,* 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910).[25]

''Appellant, however, seeks to come within the application of the Cruel and Unusual Punishment Clause announced in *Robinson* v. *State of California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), which involved a state statute making it a crime to 'be addicted to the use of narcotics.' This Court held there that 'a state law which imprisons a person thus afflicted [with narcotic addiction] as a criminal, even though he has never touched any narcotic drug within the State or been guilty of any irregular behavior there, inflicts a cruel and unusual punishment. . . .' Id., at 667, 82 S.Ct., at 1420-1421 [8 L.Ed.2d at p. 763].

''On its face the present case does not fall within that holding, since appellant was convicted, not for being a chronic alcoholic, but for being in public while drunk on a particular occasion. The State of Texas thus has not sought to punish a mere status, as California did in *Robinson*; nor has it attempted to regulate appellant's behavior in the privacy of his own home. Rather, it has imposed upon appellant a criminal sanction for public behavior which may create substantial health and safety hazards, both for appellant and for members of the general public, and which offends the moral and esthetic sensibilities of a large segment of the community. This seems a far cry from convicting one for being an addict,

''[25]See generally Note, *The Cruel and Unusual Punishment Clause and the Substantive Criminal Law,* 79 Harv. L.Rev. 635 (1966).''

being a chronic alcoholic, being 'mentally ill, or a leper. . . .'
Id., at 666, 82 S.Ct., at 1420 [8 L.Ed.2d at p. 763].

"*Robinson* so viewed brings this Court but a very small
way into the substantive criminal law. And unless *Robinson* is
so viewed it is difficult to see any limiting principle that
would serve to prevent this Court from becoming, under the
aegis of the Cruel and Unusual Punishment Clause, the ulti-
mate arbiter of the standards of criminal responsibility, in
diverse areas of the criminal law, throughout the country.

"It is suggested in dissent that *Robinson* stands for the
'simple' but 'subtle' principle that '[c]riminal penalties may
not be inflicted upon a person for being in a condition he is
powerless to change.' Post, at 2171 [20 L.Ed.2d at p. 1287].
In that view, appellant's 'condition' of public intoxication
was 'occasioned by a compulsion symptomatic of the disease'
of chronic alcoholism, and thus, apparently, his behavior
lacked the critical element of *mens rea*. Whatever may be the
merits of such a doctrine of criminal responsibility, it surely
cannot be said to follow from *Robinson*. The entire thrust of
*Robinson's* interpretation of the Cruel and Unusual Punish-
ment Clause is that criminal penalties may be inflicted only if
the accused has committed some act, has engaged in some
behavior, which society has an interest in preventing, or per-
haps in historical common law terms has committed some
*actus reus*. It thus does not deal with the question of whether
certain conduct cannot constitutionally be punished because it
is, in some sense, 'involuntary' or 'occasioned by a compul-
sion.'

"Likewise, as the dissent acknowledges, there is a substan-
tial definitional distinction between a 'status,' as in *Robinson*,
and a 'condition,' which is said to be involved in this case.
Whatever may be the merits of an attempt to distinguish
between behavior and a condition, it is perfectly clear that the
crucial element in this case, so far as the dissent is concerned,
is whether or not appellant can legally be held responsible for
his appearance in public in a state of intoxication."

In *Driver* v. *Hinnant, supra,* 356 F.2d 761, 764, it is said:
"However, our excusal of the chronic alcoholic from criminal
prosecution is confined exclusively to those acts on his part
which are compulsive as symptomatic of the disease. With
respect to other behavior—not characteristic of confirmed
chronic alcoholism—he would be judged as would any person
not so afflicted."

It is, therefore, apparent that even the United States courts

do not countenance a defense such as is tendered in the present case, and this conclusion is reinforced and made certain by the treatment of the subject in California authorities.

Section 22 of the Penal Code makes in cases of intoxication a specific holding of nonexcuse. That section provides: "no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time, in determining the purpose, motive, or intent with which he committed the act." (See *People* v. *Gordan*, 103 Cal. 568, 575-576 [37 P. 534]; *People* v. *Wilson*, 261 Cal. App.2d 12, 19-20 [67 Cal.Rptr. 678]; *People* v. *Stephens*, 168 Cal.App.2d 557 [336 P.2d 221[.)

The section is such that if it is necessary to prove "any particular species or degree of crime" the jury has the right to take into consideration the fact that the accused was intoxicated at the time in determining motive or intent. Obviously, in a crime which requires the proof of a specific intent, a state of intoxication could be weighed by the jury in determining whether the crime was committed or, in certain species of crimes, whether the crime was of the first degree or second degree. But the section makes it clear, in our opinion, that in the absence of such special circumstances the existence of intoxication voluntarily induced does not excuse the crime.

The leading case in this state on this subject is *People* v. *Conley*, 64 Cal.2d 310, where on page 323, etc. [49 Cal.Rptr. 815, 411 P.2d 911], the court, speaking through Mr. Chief Justice Traynor, has the following to say: "Unconsciousness is ordinarily a complete defense to a criminal charge. (Pen. Code, § 26, subd. Five.) If the state of unconsciousness is caused by voluntary intoxication, however, it is not a complete defense. Intoxication can so diminish a person's mental capacity that he is unable to achieve a specific state of mind requisite to a crime, but, even if it is sufficient to destroy volition, it cannot excuse homicide. (*People* v. *Baker*, 42 Cal. 2d 550, 575 [268 P.2d 705].) Unconsciousness caused by voluntary intoxication is governed by Penal Code section 22, rather than section 26, and it is not a defense when a crime requires only a general criminal intent. (*People* v. *Gorshen*, *supra*, 51 Cal.2d 716, 727 [336 P.2d 492]; *People* v. *Baker*, *supra*, 42 Cal.2d 550, 575 [268 P2d 705]; *People* v. *Sanchez*,

35 Cal.2d 522, 531 [219 P.2d 9].) The union or joint opera-
tion of act and intent or criminal negligence must exist in
every crime, including manslaughter (Pen. Code, § 20), and is
deemed to exist irrespective of unconsciousness arising from
voluntary intoxication. An instruction that does not distin-
guish unconsciousness caused by voluntary intoxication from
that induced by other causes is erroneous.'' (See also: *People*
v. *Gorshen*, 51 Cal.2d 716 [336 P.2d 492] ; *People* v. *Baker*, 42
Cal.2d 550 [268 P.2d 705] ; *People* v. *Sanchez*, 35 Cal.2d 522
[219 P.2d 9] ; *People* v. *Alexander*, 182 Cal.App.2d 281 [6
Cal.Rptr. 153].)

In *People* v. *Wilson, supra,* 261 Cal.App.2d 12, 19-20,
appellant claimed that he was a chronic alcoholic and
that to subject him to criminal sanctions for alleged crimes
committed while he was intoxicated constituted cruel and
inhuman punishment as prohibited by the Eighth Amend-
ment. However, the appellate court did not agree with him,
saying: ''Appellant cites no authority for his final contention
that he may not be subjected to criminal sanctions for acts
committed while intoxicated as a result of a chronic alcoholic
condition. The federal courts have determined that an indi-
vidual may not be confined for being addicted to the use of
narcotics (*Robinson* v. *California,* 370 U.S. 660 [8 L.Ed.2d
758, 82 S.Ct. 1417]) and that criminal sanctions should not be
imposed upon a chronic alcoholic for appearing in public in
his diseased condition (*Easter* v. *District of Columbia,* 361
F.2d 50 [124 App.D.C. 33] ; *Driver* v. *Hinnant,* 356 F.2d 761)
because this would violate the principles of the Eighth
Amendment to the federal Constitution. From these prece-
dents we may infer that the law prohibits the punishment of
an individual for incurring and suffering a particular chronic
condition or illness. (*In re Carlson,* 64 Cal.2d 70, 72-73 [48
Cal.Rptr. 875, 410 P.2d 379].) However, neither narcotics
addiction (*People* v. *Bowens,* 229 Cal.App.2d 590, 601 [40
Cal.Rptr. 435]) nor chronic alcoholic intoxication (*Driver* v.
*Hinnant, supra,* 356 F.2d 761, 764) confers immunity from
criminal prosecution or conviction. The trial court, on sub-
stantial evidence, properly determined that appellant had the
capacity to form and did form the specific intent to commit
the robberies and the general criminal intent to commit the
crimes of kidnaping and assault with a deadly weapon.''

The alleged rule in the federal court cases heretofore cited
as applicable to a case charging a crime has been consistently
refused as a ground for reversal in a number of California

948

decisions. (See *In re Spinks*, 253 Cal.App.2d 748 [61 Cal. Rptr. 743]; *People* v. *Zapata*, 220 Cal.App.2d 903 [34 Cal. Rptr. 171]; *People* v. *Bowens*, 229 Cal.App.2d 590 [40 Cal. Rptr. 435].)

It, therefore, seems clear to us that the major defense tendered by the appellant is unsound and inapplicable.

■ Appellant secondly contends that the court was in error by refusing to give the following instruction requested by the appellant:

''Where a person commits an act without being conscious thereof, such act is not criminal even though, if committed by a person who was conscious, it would be a crime.

''This rule of law does not apply to a case in which the mental state of the person in question is due to intoxication resulting from the voluntary use of drugs or intoxicating liquor, but applies only to cases of persons suffering from the delirium of fever, epilepsy, a blow on the head or the involuntary taking of drugs or intoxicating liquor, and other cases in which there is no functioning of the conscious mind and the person's acts are controlled solely by the subconscious mind.'' While the rule stated is in part correct, the proposed instruction is not sound in all of its parts and would have been erroneous, if given; there was no opinion evidence as to what the ''subconscious mind'' is, or that what the defendant did was activated by the subconscious mind.

Appellant also argues that the error of refusal was compounded by the following instruction which was given by the trial court at the request of the People:

''Now, there has been a good deal of talk and testimony concerning intoxication, and I will give you our standard instructions on that subject.

''Our law provides that 'no act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in that condition.' [This is the first sentence of section 22 of the Penal Code.]

''This means that drunkenness, if the evidence shows that the defendant was in such a condition when he allegedly committed any of the crimes charged, is not of itself a defense in this case. It may throw light on the occurrences and it may aid you in determining what took place, but when a person in a state of intoxication, voluntarily produced by himself, commits a crime such as those charged in this case, the law does not permit him to use his own vice or weakness as a shelter against the normal legal consequences of his conduct.''

The court's action as to these proposed charges, including the one refused and the one given, was correct. The case at bar involved voluntary intoxication only, and there was no occasion to instruct on involuntary intoxication. When, on a given occasion, a person takes his first drink by choice and afterwards drinks successively and finally gets drunk, that is voluntary intoxication, even though he may be an alcoholic.

The last contention of the defendant is that error requiring the reversal of the conviction centers in the claim that when the charge is that set forth in counts I and V, that is to say, violation of section 245 of the Penal Code, the prosecution must prove a separate specific intent to injure the person against whom the assault is conducted. As we have seen, section 22 of the Penal Code provides that voluntary intoxication is no defense to a charge of breach of the criminal law. The trial judge took the position well authenticated in California law that the crime of assault by means of force likely to produce great bodily injury does not require separate proof of an intent to injure; the jury may infer such intent from the evidence as to what was done by a defendant; Witkin, in his work on California Crimes, states without qualification or equivocation that no specific intent is required (1 Witkin, Cal. Crimes (1963) § 264, pp. 249, 250, also 1967 Supp.Cal.Crimes, § 264, p. 67.)

In *People* v. *Griffin*, 90 Cal.App.2d 116, 120-121 [202 P.2d 573], Mr. Justice Peters, then presiding justice of the Court of Appeal, First Appellate District, Division One, discussed the question whether in the charge of a violation of section 245 of the Penal Code it was necessary to prove a specific intent to commit the offense, and it is said: ''To commit that offense no proof of a specific intent to commit the offense is necessary. Proof of an intent to shoot the victim is not necessary. Thus, in *People* v. *Corlett*, 67 Cal.App.2d 33, 54 [153 P.2d 595 [605] 964] it is stated: 'The defendant was convicted of a mere assault with a deadly weapon under section 245 of the Penal Code. That section provides that ''Every person who commits an assault . . . with a deadly weapon or instrument or by any means or force *likely to produce great bodily injury,*'' is guilty of that offense. The *intention* to actually injure another is not mentioned in that section. Section 240 of that code provides that ''An assault is an unlawful attempt, *coupled with a present ability,* to commit a violent injury on the person of another.'' If a rifle is deliberately and unlawfully fired toward another person in a manner

"likely to produce great bodily injury," an assault with a deadly weapon may be accomplished even if the defendant does not really intend to *hit* the victim. It has been held that an assault with a deadly weapon does not "involve the necessity of proof of any specific intent to commit it." '

"In *People* v. *Lim Dum Dong,* 26 Cal.App.2d 135, 140 [78 P.2d 1026], the court held that to prove an assault with a deadly weapon 'it was not necessary for the prosecution to specifically prove the defendant intended to injure the Japanese girl by firing the revolver at her.'

"In *People* v. *Peak,* 66 Cal.App.2d 894, 900 [153 P.2d 464], the court summarized the applicable law as follows: 'In the offense of assault with a deadly weapon, malice is not an element of the crime; an intent to use the deadly instrument may be implied from the manner of its use. If the act is wrongful and the firing of a gun under the circumstances is unlawful, the intent may be inferred from the method used, including the position of the parties and all of the surrounding circumstances. "Where the act is both unlawful and wrongful, and well calculated to inflict serious personal injury, the law will imply malice and an unlawful intention and override any actual intention existing in the mind of the aggressor. Thus, while it is not an assault to fire a gun in the air for the purpose of frightening another, it is an assault, without regard to the aggressor's intention, to fire a gun at another or in the direction in which he is standing. The law will not tolerate such a reckless disregard for human life." '

"The Supreme Court, in *People* v. *McCoy,* 25 Cal.2d 177, 194 [153 P.2d 315], had the following to say on this subject: '. . . *specific intent* is not an element of the crime of assault with a deadly weapon . . . , and so where the evidence is sufficient to establish the character of the instrument as charged, it is not necessary for the prosecution to prove specifically that the defendant intended to injure the complaining witness. Such intent may then be implied from the doing of the unlawful act.' "

The same problem is thus discussed by Mr. Justice Burke, then presiding justice of the Court of Appeal, Second Appellate District, Division Four, in the case of *Newman* v. *Larsen,* 225 Cal.App.2d 22, 24 [36 Cal.Rptr. 883]: "Specific intent is not necessary for the crime of assault with a deadly weapon. (*People* v. *Sandoval,* 222 Cal.App.2d 348, 351 [35 Cal.Rptr. 227].) Intent may be implied from the commission of wrongful acts evidencing wanton, wilful or reckless disregard for

human safety. (*Lopez* v. *Surchia,* 112 Cal.App.2d 314, 318 [246 P.2d 111]; *Lowry* v. *Standard Oil Co.,* 63 Cal.App.2d 1, 7 [146 P.2d 57].) Thus, the minimal intent requirement of the crime for which defendant stands convicted, and therefore an issue *necessarily* decided in the criminal case, was that defendant had so acted with a wanton, wilful disregard for human safety. Under the rule in *Teitelbaum, supra,* [58 Cal. 2d 601 (25 Cal.Rptr. 555, 375 P.2d 435)], the trial court in the civil action was likewise requested to find, at least, that the assault on plaintiff was committed with wanton and wilful disregard for human safety. It follows that if defendant's actions in committing the assault were such that his intent to injure is necessarily implied, then, with respect to any injury which resulted from the battery accomplished as a consequence of the assault, his intent to injure is also necessarily implied.''

In the case of *People* v. *Walker,* 99 Cal.App.2d 238, 242 [221 P.2d 287], Mr. Justice Griffin of the Court of Appeal, Fourth Appellate District, discusses the question as follows: ''The evidence and the law as applied to the evidence sufficiently established defendant's guilt of the crime with which he was charged. (Pen. Code, § 245.) The evidence as to the manner of the use of the knife and the injury inflicted thereby was such that the only rational conclusion the jury could have reached under the circumstances was that the knife was a deadly weapon. (*People* v. *Petters,* 29 Cal.App.2d 48, 52 [84 P.2d 54]; 3 Cal.Jur. p. 205 § 21; *People* v. *McCoy,* 25 Cal.2d 177, 188 [153 P.2d 315]; *People* v. *Arguilida,* 85 Cal.App.2d 623 [193 P.2d 478].)''

In *People* v. *Corlett,* 67 Cal.App.2d 33, 55 [153 P.2d 595, 964], the court states: ''It has been held that an assault with a deadly weapon does not 'involve the necessity of proof of any specific intent to commit it.' (*People* v. *Marseiler,* 70 Cal. 98, 100 [11 P. 503]; *People* v. *Gordan,* 103 Cal. 568 [37 P. 534]; *People* v. *Lopez,* 81 Cal.App. 199, 202 [253 P. 169]; *People* v. *Lim Dum Dong,* 26 Cal.App.2d 135, 140 [78 P.2d 1026].)'' And *People* v. *Dinkins,* 242 Cal.App.2d 892, 904 [52 Cal.Rptr. 134], holds that in crimes defined by section 245 of the Penal Code ''the intent may be inferred from the doing of the wrongful act.''

In *People* v. *Finley,* 219 Cal.App.2d 330, 340 [33 Cal.Rptr. 31], Mr. Justice Ashburn states: ''. . . the rule is that specific intent is not essential to the offense. [Citing authorities.] The use of the described force is what counts, not the intent with

which same is employed. Parenthetically, we point out that in this instance the intent, if important, would readily be inferred from the conduct of defendant as proved by the prosecution.''

*People* v. *Sawyer,* 256 Cal.App.2d 66, 74-75 [63 Cal.Rptr. 749], discusses a situation where two crimes are charged in a given case, one of which requires proof of a specific intent and the other (aggravated assault) does not. The court says: ''When a specific intent crime is charged, a jury instruction on general criminal intent without explanation or qualification constitutes error. (*People* v. *Holquin,* 229 Cal.App.2d 398, 403 [40 Cal.Rptr. 364.].) The five defendants were on trial not only for burglary, but for aggravated assault. The latter crime requires proof only of general criminal intent. (1 Witkin, Cal. Crimes (1963) § 264.) Thus the court was obliged to instruct the jury on the intent concept applicable to each of these crimes. The court instructed the jury on the elements of assault and on the subject of general intent, then gave a specific intent instruction with explanatory statements, making it clear that the specific intent requirement applied only to the burglary count. The court's explanation adequately communicated the idea that burglary required proof of specific and not general criminal intent. The instructions were proper.''

The foregoing selection of cases does not begin to represent the total holding on this question throughout California. We cite the following additional cases and desire to make it clear that we have not exhausted the possible field of citations: *People* v. *Gaines,* 247 Cal.App.2d 141 [55 Cal.Rptr. 283]; *People* v. *Lim Dum Dong,* 26 Cal.App.2d 135, 140 [78 P.2d 1026]; *People* v. *Laya,* 123 Cal.App.2d 7, 15 [266 P.2d 157]; *People* v. *Swansboro,* 200 Cal.App.2d 831, 837 [19 Cal.Rptr. 527]; *People* v. *Herd,* 220 Cal.App.2d 847, 850 [34 Cal.Rptr. 141]; *People* v. *Stephens, supra,* 168 Cal.App.2d 557; *People* v. *Sandoval,* 222 Cal.App.2d 348, 351 [35 Cal.Rptr. 227]; *People* v. *Wright,* 258 Cal.App.2d 762, 766-767 [66 Cal.Rptr. 95]; *People* v. *Sears,* 62 Cal.2d 737 [44 Cal.Rptr. 330, 401 P.2d 938]; *People* v. *Flummerfelt,* 153 Cal.App.2d 104, 106 [313 P.2d 912]; Fricke and Alarcon, Cal. Criminal Law (8th ed.) p. 186; *People* v. *Lopez,* 81 Cal.App. 199, 202 [253 P. 169]; *People* v. *Gordan, supra,* 103 Cal. 568, 575; *People* v. *McCoy,* 25 Cal.2d 177, 194 [153 P.2d 315]; 92 A.L.R.2d 635; 8 A.L.R.3d 1236.

A California appellate court opinion in *People* v. *Fanning,*

265 Cal.App.2d 729, 734 [71 Cal.Rptr. 641], holds the other way: ''In spite of occasional statements to the contrary (*People* v. *Gaines*, 247 Cal.App.2d 141, 148 [55 Cal.Rptr. 283]; *People* v. *Claborn*, 224 Cal.App.2d 38, 42 [36 Cal.Rptr. 132]), we think it now settled that assault is a specific intent crime. (*People* v. *Coffey*, 67 Cal.2d 204, 221-222 [60 Cal.Rptr. 457, 430 P.2d 15]; *People* v. *Wilson*, 66 Cal.2d 749, 757-760 [59 Cal.Rptr. 156, 427 P.2d 820]; *People* v. *Carmen*, 36 Cal.2d 768, 775-776 [228 P.2d 281]; *People* v. *Wheeler*, 260 Cal. App.2d 522, 525 [67 Cal.Rptr. 246]; *People* v. *Corson*, 221 Cal.App.2d 579, 581 [34 Cal.Rptr. 584].) 'One could not very well ''attempt'' or try to ''commit'' an injury on the person of another if he had no intent to cause any injury to such other persons. . . .' (*People* v. *Carmen, supra,* p. 775.) ''

We are not persuaded that the cases cited in that opinion overrule the well-established principle supported by the cases urged by us that the law in a section 245 crime does not require proof of a specific intent to harm the victim but relies upon the general rule that what was done by an offending defendant shows that harm was intended by the aggravated assault. We do not believe that a principle so well ensconced in the law of the state should be overruled as the *Fanning* case inferentially attempts to do. We prefer to follow the overpowering weight of authority in this state as set forth by Witkin in California Crimes and in numerous decisions and to reject the pronouncement of the *Fanning* opinion, in which it is asserted that there are only ''occasional statements to the contrary'' of the view expressed therein. The holding that no proof of separate specific intent is required is firmly established, and its continued weight, in our opinion, is vastly greater than that of the conclusion expressed in the *Fanning* opinion.

The record shows that the defendant, having become voluntarily intoxicated, employed force and violence on five different occasions against peaceable citizens. The principal aim of the criminal law is to preserve peace and protect honest citizens from injuries which can come to them through fierce assault or other wrong. To say that when a man voluntarily gets drunk and thus permits his antagonisms to work openly against peaceable people, contrary to the laws designed to protect them, he must be held innocent because he claims to be an alcoholic would be to encourage anarchy. The California law, in conformity with historical experience, has said that voluntary intoxication is no excuse for crime. Its viewpoint

has been upheld by the consistent ruling of California courts, and it should continue to be the law of the land.

The judgment is affirmed.

Stone, J., and Gargano, J., concurred.

A petition for a rehearing was denied February 18, 1969, and appellant's petition for a hearing by the Supreme Court was denied March 19, 1969. Peters, J., was of the opinion that the petition should be granted.