[Crim. No. 16529.  Second Dist., Div. One.  Jan. 22, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
NOLAN B. RASHER, Defendant and Appellant.

**COUNSEL**

Dennis G. Merenbach, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Ivan Hoffman, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**LILLIE, J.**—Defendant was charged with committing an assault with a deadly weapon upon Norman Rasher in violation of section 245, Penal Code. A jury returned two verdicts—not guilty of assault with a deadly weapon, and guilty of "DRAWING OR EXHIBITING A DEADLY WEAPON IN A RUDE, THREATENING OR ANGRY MANNER, in violation of § 417 Penal Code of the State of California, a lesser included offense of Assault With a Deadly Weapon." Defendant was sentenced to imprisonment in the county jail, whereupon the People filed a mentally ill petition (civil) and the court remanded defendant to custody for delivery to the county hospital pending hearing thereon. He appeals from the judgment.

Defendant is the brother of Norman Rasher; on October 14, 1968, he

went to Rasher's place of employment and aiming a rifle first at him, then at Jean Howerton, a friend, and again at him and threatening both, fired a shot which struck a coffe cup; he again aimed at Rasher, then at Jean threatening both, backed out of the office and left. Rasher was slightly injured when pieces of the plastic cup flew up and struck him.

Appellant contends that "section 417 is not necessarily a lesser included offense of Section 245" and it was prejudicial error to give an instruction to that effect.

*People* v. *Torres,* 151 Cal.App.2d 542, 544-545 [312 P.2d 9], holds that as a matter of law a violation of section 417, Penal Code,[1] is not a lesser and necessarily included offense in a violation of section 245, Penal Code;[2] however, this is not really the issue here. It appearing from an examination of the record that there is overwhelming evidence of defendant's guilt of exhibiting and brandishing a loaded rifle in a threatening manner in violation of section 417, Penal Code,[3] the real issue is whether defendant was properly convicted of an offense with which he was not, but could have been (*Kellett* v. *Superior Court,* 63 Cal.2d 822, 827 [48 Cal. Rptr. 366, 409 P.2d 206]) formally charged in the information. Because of an unusual set of circumstances, we conclude that he was.

■ Norman Rasher, head operator for Standard Oil and Gas Plant at Gaviota, was working the 3 to 11:30 p.m. shift; around 8 p.m. Jean Howerton, a friend, who had asked defendant to accompany her but he refused, brought his lunch. Rasher was sitting at his desk with his back to the door in a swivel chair; the desk was about eight feet from the door. Jean set a thermos of coffee and a sack of sandwiches on the desk, poured a cup of coffee for Rasher and sat down to Rasher's left at the end of the desk in a chair by the typewriter desk shelf. The cup of coffee had been placed on top of the typewriter and Rasher started to eat. Jean heard a car drive up and said, "I guess [defendant] changed his mind and decided to come on up." They looked up and saw defendant standing at the door holding Rasher's rifle; he was pointing it at Rasher. Rasher, who had the rifle about

---

[1]Section 417 provides: "Every person who, except in self-defense, in the presence of any other person, draws or exhibits any firearm, whether loaded or unloaded, or any other deadly weapon whatsoever, in a rude, angry or threatening manner, or who in any manner, unlawfully uses the same in any fight or quarrel is guilty of a misdemeanor."

[2]Section 245 provides in pertinent part: "(a) Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury is punishable . . . ."

[3]While we deem it here irrelevant it also appears from the evidence that factually the violation of section 417 here was an included offense within assault with a deadly weapon. (*People* v. *Wilson,* 66 Cal.2d 749 [59 Cal.Rptr. 156, 427 P.2d 820]; *People* v. *Muszalski,* 260 Cal.App.2d 611 [67 Cal.Rptr. 378].)

20 years, kept it in his bedroom; he knew it was loaded with shells in the magazine but not in the chamber. When he saw the hammer pulled back he said to defendant, "Do you realize there are shells in the magazine"; defendant answered, "Yes, I know it's loaded." Defendant did not hold the gun on the shoulder as a person would be aiming along the barrel, sighting" but held it "somewhat down the arm a bit." Rasher knew that type of gun to be "exceptionally dangerous with the hammer back because it can be knocked off and go off." Defendant said, "Norman, who are you quoting"; Rasher told him he did not know what he meant. Then defendant pointed the gun at Jean and asked her who she was "quoting." Rasher started to get out of his chair thinking he could take the rifle from defendant but defendant told him to sit down or he would shoot him; Rasher sat down, then defendant pointed the rifle at him again and said, "Did you know, Norman, that the Communists are trying to frame you. . . . Norman, I am going to shoot you." It appeared to Rasher that defendant was going to shoot him but the instant defendant pulled the trigger "he pulled the gun off and away" from Rasher and hit the coffee cup. Rasher testified that defendant is a good shot; they grew up together and hunted and practiced target shooting together; "I think he deliberately took aim at the coffee cup." As the bullet struck the cup the explosion scared Rasher and he went over backwards in the swivel chair; as he started to get up defendant told him to stay down or he would shoot him. While Rasher was still on the floor, defendant "jacked another shell into the chamber." Jean thought Rasher had been injured and started to go to him but defendant again pointed the gun at her and told her "to set back down or he was going to shoot her." Jean said, "Please, Nolan [defendant], don't do that." She testified, "He [defendant] was just kind of going back and forth from Norman to I with the gun," waving the gun back and forth between her and Rasher; then defendant stood there a little bit, sighed, backed out of the office pointing the rifle at them, the hammer still back on it, got in his car and left. Rasher estimated that the incident took about 10 or 15 minutes. Defendant did not testify.

The foregoing uncontradicted evidence offered by the People proves an almost, if not perfect case of exhibiting and brandishing a loaded firearm in a threatening manner in violation of section 417, Penal Code, a misdemeanor. (*People* v. *Coffey,* 67 Cal.2d 204, 222 [60 Cal.Rptr. 457, 430 P.2d 15].)

█ Defendant's conduct in relation to the trial proceedings leading to the giving of the instruction on section 417, Penal Code, and which now precludes him from urging error in that connection, had its genesis at the inception of the trial before any evidence was taken when he submitted to the court his requested instructions which more or less defined the issues of the trial. They included CALJIC 115 [rev.] (jury may convict of lesser

offense) to the effect that assault with a deadly weapon "necessarily includes the lesser offense of exhibiting a deadly weapon in a rude, threatening or angry manner," and other relating to specific intent and diminished capacity. By the submission of these instructions the People and the court were placed on notice by defendant that he intended to rely on these theories of defense. In reliance thereon the cause was tried by both sides as though defendant could be convicted of either a violation of section 245, Penal Code, a felony, or section 417, Penal Code, a misdemeanor, or acquitted. Thus, the prosecution called Norman Rasher, Jean Howerton and Officer DaFoe; the defense consisted of the testimony of Dr. Wells, a psychiatrist, who testified that at the time of the shooting defendant could not form the specific intent to commit a battery upon a person because he was suffering from chronic schizophrenia which prevented him from having a full awareness of his actions at the time and he was governed by delusional thinking in such a way that he could not form a rational intent; and on rebuttal the People called Dr. Lambert, a psychiatrist, who testified that at the time of the offense defendant was mentally ill and it was a schizophrenic illness; however, the fact that a man suffers from schizophrenia does not necessarily mean that he does not have the capacity to commit a crime or form a specific intent to commit a battery. It was not until the conclusion of the trial, after all of the evidence was in and just before the jury arguments that defendant, wishing to take full advantage of Dr. Wells' testimony and submit the case to the jury solely on the issue of guilt of assault with a deadly weapon, or acquittal thereof on the defense of diminished capacity, sought to abandon the "lesser offense" theory and withdraw his requested instruction thereon. At this point lengthy argument arose out of the propriety of the proposed instructions. The judge vacillated considerably on the issue whether specific intent was required for a violation of section 245—before the trial he had ruled that specific intent was an element; after argument he reversed that ruling, then when it was pointed out to him that the cause had been tried on that theory, he reversed himself again finally ruling that assault with a deadly weapon was a crime that required specific intent and the defense of diminished capacity was a valid one. Then believing that the testimony of Dr. Wells would support his defense of diminished capacity and that the jury would acquit him, defendant tried to take from the jury's consideration the misdemeanor offense (§ 417), and moved the court "not to give any instruction regarding 417"; the motion was denied and defendant's rerequested instruction thereon was given on the court's own motion. After acquitting defendant of assault with a deadly weapon, the jury found defendant guilty of drawing or exhibiting a deadly weapon in a threatening manner in violation of section 417 and in accord with the instruction "a lesser included offense of assault with a deadly weapon." In the light of the evidence we do not think that in acquitting defendant of assault with a

deadly weapon the jury felt the proof failed to come up to the standard of a felony, but rather as an act of leniency found him guilty of the misdemeanor. Actually the determination of his case was more favorable to defendant than the evidence warranted.

It makes little difference that the violation of section 417, Penal Code, was designated by the jury as a lesser included offense for the evidence fully supports the misdemeanor conviction whether or not it be a "lesser included offense of assault with a deadly weapon." Inasmuch as defendant was acquitted of the single offense (felony) charged against him, the issue arises whether the jury could properly find him guilty of the misdemeanor which was not formally charged. In the light of the fact that defendant properly could have been charged with both a felony (§ 245) and the misdemeanor (§ 417) in the same information (*Kellett* v. *Superior Court,* 63 Cal.2d 822, 827 [48 Cal.Rptr. 366, 409 P.2d 206]); because of defendant's conduct at the outset, the trial proceeded as though defendant could have been convicted of either crime; and the fact of the overwhelming evidence of defendant's guilt of the misdemeanor offense and that from the very beginning he was fully informed of the case he would be expected to meet at the trial and was in no manner misled in making his defense or as to any theory of defense which he himself injected into the trial, we conclude that the effect of all of the proceedings had in the trial court (even though at the conclusion defendant objected and tried to abandon the theory of "a lesser offense") was to accomplish an informal amendment of the information to include the charge of violation of section 417, Penal Code, which was fully supported by the evidence, although not by the original information. (*People* v. *Francis,* 71 Cal.2d 66, 74-75 [75 Cal.Rptr. 199, 450 P.2d 591]; *People* v. *Asher,* 273 Cal.App.2d 876, 908 [78 Cal.Rptr. 885]; *People* v. *Taylor,* 273 Cal.App.2d 477, 485 [78 Cal.Rptr. 51]; *People* v. *Wilson,* 271 Cal.App.2d 60, 62,-63 [76 Cal.Rptr. 195]; *People* v. *Powell,* 236 Cal.App.2d 884, 887-888 [46 Cal.Rptr. 417]; *People* v. *Hensel,* 233 Cal.App.2d 834, 840 [43 Cal.Rptr. 865]; see also *People* v. *Blunt,* 241 Cal.App.2d 200, 205 [50 Cal. Rptr. 440].) Defendant came to court knowing that he was also to defend against the misdemeanor charge, he having introduced it as an issue at the outset of the trial; he had full opportunity to and did in fact offer such defense as he had and he was represented by capable counsel, thus there was no lack of due process. (*People* v. *Blunt,* 241 Cal.App.2d 200, 204 [50 Cal. Rptr. 440].)

In *People* v. *Hensel,* 233 Cal.App.2d 834 [43 Cal.Rptr. 865], defendant

was charged with a violation of section 288a, Penal Code, but ultimately found guilty of a violation of section 647a, a misdemeanor (lewd and dissolute conduct in a public place). The court held that, while this was not a lesser and included offense within section 288a, Penal Code, defendant could not complain that he was found guilty of the misdemeanor although not charged therewith, where defendant himself expressly asked the court to reduce his offense to a violation of section 650½ (act that openly outrages public decency), thus tendering to the court an offense that charged him with public conduct thereby impliedly consenting that the information be treated as though it had been amended to add the element of public conduct. Said the court at pages 839-840: "In *People* v. *Leech* (1965) 232 Cal.App.2d 397 [42 Cal.Rptr. 745], a judgment of conviction, based on a jury verdict of guilty of a violation of section 417 of the Penal Code, was reversed because the information had charged a violation of section 245 and we concluded that the offense denounced by section 417 was not a necessarily included offense within that denounced by section 245. However, in *Leech,* the trial court had submitted the case to the jury under both section 245 and section 417. There is nothing in the record of that case to indicate that the defendant had requested, or had consented to, a submission of any offense other than the single offense (a violation of section 245) which was pleaded. By virtue of sections 1176 and 1259 of the Penal Code, this action of the trial court, not having been invited or acquiesced in by defendant, was before the appellate court for review. But in the case at bench, the case had been heard by the trial court without a jury; the interjection of section 647, subdivision (a) was part of a running discussion between court and counsel, designed to arrive at a just determination of a particular case on its own particular facts. Clearly, with the consent of defendant, the information could, at that juncture, have been amended to add, as an additional count, a charge of violating subdivision (a) of section 647. Defendant had, earlier, expressly asked the court to 'reduce' his offense to a violation of section 650½, and thereby impliedly consented that the information be treated as though that offense had been charged and pled to. But, insofar as section 650½ could be applicable to defendant, it also introduced the element of publicity. Having, thus, himself, tendered to the court for action an offense which charged him with 'public' conduct, he cannot complain that the court, unwilling to go as far as he desired, adopted as the basis for its decision another statutory section which also added to the language of the information that same element of public conduct.

"We conclude that the effect of the proceedings had in the trial court in this case was to accomplish an informal amendment of the information to include a charge which was supported by the evidence although not by the original information; and that defendant knowingly allowed the case to proceed to judgment on the information as thus amended. Having, by this

method, secured an acquittal of the original charge, defendant may not now repudiate the proceedings in which he participated."

Distinguishing its case from *People* v. *Blunt,* 241 Cal.App.2d 200 [50 Cal.Rptr. 440], *People* v. *Powell,* 236 Cal.App.2d 884 [46 Cal.Rptr. 417], and *People* v. *Hensel,* 233 Cal.App.2d 834 [43 Cal.Rptr. 865], the court in *People* v. *Wilson,* 271 Cal.App.2d 60, said, at page 63 [76 Cal.Rptr. 195]: "In those cases convictions for lesser included offenses, which were really no such thing, were upheld on the theory that the proceedings in question were 'informal amendments' of the information, charging the elements of the lesser offense not originally included in that document."

■ Where under certain conduct of the defendant or circumstances created by him he is deemed to have impliedly consented that the information be treated as though the crime of which he has been convicted had been pleaded, the conviction where supported by the evidence will be upheld. (*People* v. *Francis,* 71 Cal.2d 66, 74-75 [75 Cal.Rptr. 199, 450 P.2d 591]; *People* v. *Taylor,* 273 Cal.App.2d 471, 477 [78 Cal.Rptr. 51].) ■ In light of the foregoing it appears to be immaterial that the jury was instructed that a violation of section 417, Penal Code, was a lesser and necessarily included offense; the instruction on section 417 was not reversible error.

The judgment is affirmed.

Wood, P. J., concurred.

**THOMPSON, J.**—I reluctantly dissent. My reluctance stems from the undoubted guilt of the appellant of the offense not charged—brandishing a deadly weapon. My dissent is impelled by my reading of the record and of the applicable decisional law.

### *Facts*

Appellant was charged with violation of Penal Code section 245 (assault with a deadly weapon). His theory of defense was diminished capacity based upon *People* v. *Fanning,* 265 Cal.App.2d 729, 734 [71 Cal.Rptr. 641]. During the proceedings, appellant's counsel proposed a jury instruction to the effect that the offense of brandishing a deadly weapon is a lesser included offense within the charge of assault with a deadly weapon. Appellant's counsel then withdrew the instruction and requested that it not be given. The court nevertheless erroneously gave the withdrawn instruction, and the jury

having been so instructed found appellant guilty of the "lesser offense." The evidence amply supports appellant's guilt, if he was properly charged.

While the majority and I read the record alike to the extent of the foregoing, I am unable to agree with the majority's statement of fact in the following particulars: (1) My reading of the record discloses no "lengthy argument" on the proposed instruction here pertinent—the total discussion occupies less than a page in the record; and (2) I find nothing whatsoever in the record to support the statement that the case was tried upon the theory that appellant could be found guilty of either the offense charged or the offense of brandishing a deadly weapon because of appellant's having proposed an instruction on the latter crime. To the contrary, the trial judge stated unmistakably (record of trial, pp. 175, 176): "I think the testimony in this case would indicate to me it [brandishing a deadly weapon] is a necessarily included offense here."

### Issue on Appeal

The issue on appeal as framed by the majority (but not by the trial court or counsel) concerns the scope of the rule of implied amendment of an accusatory pleading. In the context of the record in the case at bench, it is properly phrased as: does action of a defendant in proposing and then withdrawing a jury instruction to the effect that an offense not charged is a lesser included offense standing alone impliedly amend the accusatory pleading to charge that offense? In my opinion that query should be answered in the negative.

### Lesser Included Offense

Appellant was charged with a violation of Penal Code section 245 (assault with a deadly weapon). He was convicted of a violation of Penal Code section 417 (exhibiting a deadly weapon in a rude or threatening manner). The latter offense is not necessarily included within the former. (*People* v. *Leech,* 232 Cal.App.2d 397 [42 Cal.Rptr. 745]; *People* v. *Torres,* 151 Cal.App.2d 542 [312 P.2d 9].) The trial court therefore lacked jurisdiction to convict appellant of the violation of Penal Code section 417 (*In re Hess,* 45 Cal.2d 171 [288 P.2d 5]) unless the accusatory pleading had been informally amended to charge the crime of which appellant was convicted.

### Implied Amendment of Accusatory Pleading

An accusatory pleading may be informally amended to charge an offense not originally charged where the amendment is accomplished with the ex-

press or implied consent of the accused. (*People* v. *Francis,* 71 Cal.2d 66 [75 Cal.Rptr. 199, 450 P.2d 591].) The question raised by the case at bench concerns the sufficiency of the conduct of appellant's counsel to constitute an implied consent.

Informal amendment of an accusatory pleading to charge a lesser related but not necessarily included offense has been found in the following: Where the defendant has submitted the matter upon the transcript of his preliminary hearing and has not objected to the finding of guilt of the lesser but not included offense. (*People* v. *Francis,* 71 Cal.2d 66, 74 [75 Cal.Rptr. 199, 450 P.2d 591]; *People* v. *Powell,* 236 Cal.App.2d 884, 887 [46 Cal.Rptr. 417].) Where the defendant was found guilty of the offense charged against him and the charge was reduced to a lesser but not included offense at his initiative on a motion for a new trial. (*People* v. *Hensel,* 233 Cal.App.2d 834, 840 [43 Cal.Rptr. 865]; *People* v. *Blunt,* 241 Cal.App.2d 200 [50 Cal.Rptr. 440].) Where the defendant requested that the trial court find him not guilty of the offense charged but guilty of a lesser but not included offense. (*People* v. *Taylor,* 273 Cal.App.2d 471 [78 Cal.Rptr. 51].) Where a jury instruction on the lesser but not included offense proposed by the defendant was not withdrawn and was given by the trial court. (*People* v. *Mayes,* 262 Cal.App.2d 195 [68 Cal.Rptr. 476]; see also *People* v. *Asher,* 273 Cal.App.2d 876, 908 [78 Cal.Rptr. 885].)

The decisions holding that an accusatory pleading has been informally amended to charge a lesser but not included offense contain one common element—the acquiescence of the defendant in the procedure by which he was convicted of the lesser crime at the time the case was submitted for decision. That element is lacking in the case at bench. While appellant's counsel had proposed an instruction on "lesser included offense" which erroneously treated a violation of Penal Code section 417 as necessarily included within a charge of a violation of Penal Code section 245, that proposed instruction was withdrawn before the jury was instructed. Appellant's counsel also specifically objected to the giving of the instruction. It cannot, therefore, be said that appellant acquiesced in the procedure followed by the trial court.

It is conceivable that an informal amendment of an accusatory pleading can result from conduct on the part of a defendant during trial which causes the matter to be tried upon the theory that he is charged with a lesser but not included offense not formally charged in the indictment or information.

I can find no such conduct in the record of the case at bench. That there was confusion at the trial as emphasized by the majority is inescapable. The confusion, however, was not caused by appellant and had nothing to do with the giving of the instruction on Penal Code section 417 by the trial judge. It rather was the product of uncertainty of the requirement of specific intent as an element of the crime of assault with a deadly weapon and the availability of diminished capacity as a defense to a charge of that crime.[1] The jury instruction which resulted in a guilty verdict of a crime neither charged nor necessarily included in a crime charged flowed not from the confusion or from a theory of trial adopted by appellant but from an erroneous conception of the trial judge on the law.[2]

The majority opinion adopts the proposition that a defendant who proposes a jury instruction by that act alone consents to an implied amendment of the accusatory pleading to encompass a theory compatible with the instruction even if he withdraws it before the jury is actually instructed and even if the court does not rely upon the proposed instruction in framing the issues of the case. I view that doctrine as a potentially undesirable extension to the existing rule of informal amendment.

The proposition, if it becomes the law of California, must inevitably cause counsel for defendants in criminal cases to hesitate before proposing a jury instruction. The doctrine of mandatory *sua sponte* instructions already places a premium upon passivity of defense counsel who may hope for a reversal through a mistake of the trial judge in failing to give a mandatory instruction. There is no substitute for active advocacy in preventing reversible error. The adoption of a doctrine which further encourages passivity and discourages active advocacy in the area of jury instructions may salvage this one tenuous criminal conviction. It does so, however, at the real risk of reversal of future cases.

I would reverse the judgment.

---

[1] The trial court was faced with the dilemma posed by conflicting Court of Appeal decisions. *People* v. *Fanning*, 265 Cal.App.2d 729 [71 Cal.Rptr. 641] holds that specific intent is an element of the crime of assault with a deadly weapon and that diminished capacity is a defense to the charge. *People* v. *Morrow*, 268 Cal.App.2d 939 [74 Cal.Rptr. 551] is contra. The conflict in the decisions will undoubtedly be resolved by our Supreme Court which has granted hearing in a similar case, *People* v. *Seals* *(Cal.App.) 80 Cal.Rptr. 710.

[2] The trial judge states at pages 175 and 176 of the record of trial: "I think the testimony in this case would indicate to me it [a violation of Penal Code section 417] is a necessarily included offense here."

*A hearing was granted by the Supreme Court on November 12, 1969. The opinion of that court is reported in 1 Cal.3d 574 [82 Cal.Rptr. 873, 462 P.2d 993].